SLIP OPINION

Cite as 2016 Ark. 136

# SUPREME COURT OF ARKANSAS

No. CR-15-522

| | |
|---|---|
| ARDWIN FRANK SYLVESTER<br>APPELLANT | **Opinion Delivered** March 31, 2016 |
| V. | APPEAL FROM THE SEBASTIAN<br>COUNTY CIRCUIT COURT<br>[NO. CR-14-633] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE J. MICHAEL<br>FITZHUGH, JUDGE |
| | AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

On May 14, 2015, appellant, Ardwin Frank Sylvester, was convicted by a Sebastian County Circuit Court jury of kidnapping, rape, and aggravated robbery and sentenced to three terms of life imprisonment. On May 20, 2015, Sylvester timely filed his notice of appeal. On October 16, 2015, Sylvester filed his brief with this court, and the State timely responded. Sylvester raises two points on appeal: (1) the State provided insufficient evidence to find Sylvester guilty of kidnapping, rape, or aggravated robbery; (2) the circuit court erred when it denied Sylvester's motion for mistrial. We have jurisdiction pursuant to Ark. Sup. Ct. R. 1–2(a)(2) (2015).

Sylvester's convictions arise from the June 24, 2014 kidnapping, rape, and aggravated robbery of DeAnn Opitz. The record demonstrates that on June 24, 2014, Opitz went to a Staples office supply store in Fort Smith, Arkansas, around 11:00 a.m. After completing her purchase and returning to the driver's side of her car, Opitz testified that a man approached

her from behind, was armed with a silver and black automatic weapon, and told her to get in the car and "scoot over" to the passenger seat. She testified that she tried to give him her purse, her keys, and her car—anything to leave her there in the parking lot. Opitz testified that she stood still at his commands and Sylvester said, "I am a bad motherfucker and I will use this gun"; she then complied and got in the car and moved over to the passenger seat. Opitz testified that she saw two Staples employees, with one employee on the phone. Opitz further testified that as Sylvester pulled out of the Staples parking area, the employee gave her a thumbs-up sign, and she shook her head "No" and gave him a thumbs-down sign. Opitz testified that they traveled on State Highway 10 and once they got to a residential area, Sylvester told her to "take [her] titties out so he could see them." She begged him not to rape her, and she said he told her he just wanted to see them, while continuing to drive, laid the gun in his lap, and pointed it at her. Opitz testified that he fondled her breasts with his right hand and was very rough tearing the straps to her dress. Opitz testified that Sylvester kept driving and went out to the industrial-park area and at that point asked her to pull up her dress so he could see her panties. Opitz again asked him not to rape her, and Sylvester made sure she knew he had the gun; she complied and pulled up her dress. With the barrel of the gun pointed at her from his lap, Sylvester instructed her to pull her panties to one side, he inserted his fingers into her vagina over and over. Opitz testified that after this, Sylvester unzipped his pants and ordered her to touch his penis. She testified that during this time Sylvester made sure that Opitz knew he could get to the gun and use it if she did not comply. She testified that after this, that they continued to drive around and were close to

2

Ashdown, and Sylvester let her cover herself back up.  She testified that Sylvester then began to go through her purse, took money from her purse, and shoved the money into the pockets of his jeans. She testified that they were driving through off-road rugged country and she feared for her life.

Opitz testified that once they got to Ashdown, Sylvester turned into a Burger King, instructed Opitz not to make any gestures or signals or talk to people or she would be hurt as well as people inside the restaurant, and he ordered two drinks.  After leaving Burger King, Sylvester pulled into a nearby EZ Mart because the fuel light in Opitz's car had come on and the vehicle needed gas.  Opitz testified that when they pulled in the EZ Mart, Sylvester put the gun into the waist of his jeans and told her again to not make any gestures, moves, or statements to anybody.  Sylvester went inside to prepay for gas. Opitz testified that when he returned, he was having trouble getting the gas tank open, asked her to exit the car and open the tank, which she did.  Opitz testified that after helping Sylvester open the gas tank, she returned to the car and did not put her seat belt on.  While Sylvester was pumping gas, a truck with a trailer with lawnmower equipment pulled in a few feet from her door.  Opitz testified that she saw the truck as an opportunity to escape because there was something between her and Sylvester.  She testified that she "threw open the door and ran to the far side of that trailer and truck so there was something between me and him, and I ran straight into the door of the EZ Mart and I told him to the lock the door, that he had a gun and I had been kidnaped."  Surveillance video from the EZ Mart was obtained, admitted into evidence, and played for the jury.  Opitz testified that the video accurately reflected what

SLIP OPINION

happened that day and also identified Sylvester. Finally, Opitz identified Sylvester at trial as the perpetrator.

Staples employee Jimmy Keith testified that he worked the register that day and that he checked Opitz out with her products. Keith testified that the front of the store is all glass, and he watched Opitz leave the store. He also testified that he saw a man in the parking lot in a crouched position with something in his hand, a pipe possibly, that the man headed toward Opitz's car and rushed behind Opitz so Opitz could not see him. At this point, Keith testified that he felt something suspicious was happening and called for his manager, Tad Steffenson. Keith testified that he first thought the man was carrying a gun, and then he decided it might be a pipe. Staples manager, Steffenson, testified that once he was summoned, he ran out the front door, and the car was thirty feet away from him. He testified that he saw Opitz in the passenger seat and gave her a thumbs-up sign and she shook her head "No" and gave a thumbs-down sign. Steffenson said when he saw this he was already calling 911 about a possible abduction and while on the phone with 911 gave her a second thumbs-up sign and Opitz again responded in the negative and gave him a thumbs-down sign.

Sylvester was tried and convicted as recited above, and this appeal followed.

A. Sufficiency of the Evidence

For his first point on appeal, Sylvester asserts that the circuit court erred in denying his motions for directed verdict because the State provided insufficient evidence to find Sylvester guilty of kidnapping, rape, or aggravated robbery. In reviewing a challenge to the

SLIP OPINION

sufficiency of the evidence, this court assesses the evidence in the light most favorable to the State and considers only the evidence that supports the verdict. *Tillman v. State*, 364 Ark. 143, 217 S.W.3d 773 (2005). This court will affirm a judgment of conviction if substantial evidence exists to support it. *Id*. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *Id*.

We begin our analysis by reviewing Sylvester's motions for directed verdict. It is a well-settled principle of appellate law that arguments not raised at trial will not be addressed for the first time on appeal. *Buford v. State*, 368 Ark. 87, 243 S.W.3d 300 (2006); *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000). Likewise, parties cannot change the grounds for an objection on appeal, but are bound by the scope and nature of their objections as presented at trial. *Id*. Here, the record demonstrates that at trial, Sylvester based his motions for directed verdicts exclusively on jurisdiction. Sylvester argued that for all three crimes, the jury would be "left to guess whether the crimes occurred in Sebastian County" and solely argued jurisdiction as a basis for his motions for directed verdicts. Therefore, at trial, Sylvester did not challenge whether the State had proved the elements of the offenses as he does now on appeal.

At trial, with regard to the kidnapping, Sylvester made the following motion for directed verdict:

| | |
|---|---|
| DEFENSE ATTORNEY: | Your Honor, we would move to dismiss the charge of kidnapping. Your Honor, the basis of that charge would be lack of jurisdiction for the Court. The basis of our motion, Your |

Honor, is in the Court section Statute 16-68 –

| | |
|---|---|
| THE COURT: | That is the same argument that we had [the] hearing on? |
| DEFENSE ATTORNEY: | Yes, sir. |
| THE COURT: | You are just wanting to renew it or do you want to restate it? |
| DEFENSE ATTORNEY: | Yes, Your Honor, I don't mind restating it, Your Honor. I would also add, Your Honor, the additional things that we have heard was we have had positive testimony that he was arrested in Sevier County from Officer Gentry with the Police Department. We heard Officer McWhirter say that he labeled it as a kidnapping case. Your Honor, of course, that statute says that jurisdiction may both lie in any county where someone is abducted or taken, but then in Part (b), the controlling part is that jurisdiction, it says the Court where the Defendant was arrested shall try the case to the exclusion of all others. Your Honor, we feel like that is a jurisdictional statute. The Defendant, as I mentioned before, has a right to raise that. We would ask for a directed verdict of acquittal on that charge on that basis. |

Next, on the rape charge, Sylvester made the following motion for directed verdict:

| | |
|---|---|
| DEFENSE ATTORNEY: | Your Honor, we would move to dismiss the charge of rape. Your Honor, the basis of our motion on that would also be lack of jurisdiction. We feel like, Your Honor, that jurisdiction was not established because there was testimony of actual or of any kind - - of course, it would be up to the trier of fact. I heard what you said about penetration, but we feel like the testimony was also that that also occurred after they were on 71 highway. We feel like the trier of fact would be left to speculate that that happened in the Fort Smith District of Sebastian County. So, we would move to dismiss the charge of rape for that reason. |

Finally, on the aggravated-robbery charge, Sylvester made the following motion for

directed verdict:

DEFENSE
ATTORNEY:      Your Honor, we would move for a directed verdict of acquittal, . . . on the aggravated robbery charge. Your Honor, the issue is jurisdiction. We feel like there was positive evidence that there was no jurisdiction in this case. Your Honor, we feel like that it was said that it was sometime after they got on Highway 71, the events as far as taking the money or things like that, that the aggravated robbery would have occurred and we feel like the trier of fact would be left to just guess that it happened in the Fort Smith District of Sebastian County, Arkansas. So, we would ask for a directed verdict on the aggravated robbery charge.

Here, the record demonstrates that Sylvester made directed verdict motions on all three charged offenses at trial. However, those motions were made based exclusively on jurisdiction. On appeal, Sylvester has changed those grounds and argues that the kidnapping, rape, and aggravated robbery convictions are all based on insufficient evidence and asserts that the State failed to prove certain elements. Specifically, he argues that the elements of kidnapping were not met because the State did not show that Opitz was restrained nor did Sylvester substantially interfere with her liberty. Next, Sylvester argues that the rape was not sufficiently proven because the State did not prove that the acts committed constitute deviant sexual activity. Finally, he argues that the aggravated robbery was not sufficiently proven by the State because the State did not prove theft; rather, the testimony was that Opitz made an unsolicited offer of her purse and its contents, and the State did not prove that Sylvester threatened Opitz to satisfy the elements of theft occurred. Sylvester also asserts that the State failed to prove that a theft occurred as a result of a threat. However, because Sylvester has changed his arguments on appeal and did not present these arguments to the circuit court, they are not preserved for our review. Consequently, we do not reach Sylvester's arguments

SLIP OPINION

regarding the sufficiency of the evidence and affirm the circuit court on this first point.

### B. Mistrial

For his second point on appeal, Sylvester asserts that the circuit court erred when it denied Sylvester's motion for mistrial. Our standard of review for the appeal of an order denying a mistrial is whether the circuit court abused its discretion. In determining whether or not a circuit court abused its discretion in refusing to declare a mistrial, this court will consider whether the prosecutor deliberately induced a prejudicial response and whether an admonition to the jury could have cured any resulting prejudice. *King v. State*, 361 Ark. 402, 405, 206 S.W.3d 883, 885 (2005) (citations omitted). An admonition to the jury usually cures a prejudicial statement unless it is so patently inflammatory that justice could not be served by continuing the trial. *Zachary v. State*, 358 Ark. 174, 188 S.W.3d 917 (2004). *See also Burks v. State*, 2009 Ark. 598, at 7, 359 S.W.3d 402, 407; *Tarkington v. State*, 313 Ark. 399, 402, 855 S.W.2d 306, 308 (1993).

Sylvester asserts that a statement made by Arkansas State Police Special Investigator Hayes McWhirter during his testimony constituted an improper comment on Sylvester's silence and amounted to *Doyle* violations, which requires our reversal. *Doyle v. Ohio*, 426 U.S. 610 (1976). Sylvester also asserts that a curative instruction would not have remedied the prejudice he suffered and urges us to reverse the circuit court. In *Doyle*, the United States Supreme Court held that the Due Process Clause bars the use for impeachment purposes of a defendant's post-arrest silence. *See also Greer v. Miller*, 483 U.S. 756, 763 (1987).

At issue is the following colloquy that occurred during Investigator McWhirter's

testimony regarding Sylvester's arrest and post–arrest interview:

| | |
|---|---|
| PROSECUTOR: | What happened in the interview? |
| MCWHIRTER: | In the interview at first he asked me what he might be charged with. I told him probably kidnapping, maybe some sexual charges. He made the statement that he couldn't do anything sexual because he was driving. Then, I asked him, Tell me about Fort Smith. And he said he went up to a car and pushed a woman over and made her get in the passenger's seat where he could drive. I asked him if he had a gun and he stated that he did. |
| PROSECUTOR: | Did that conclude the interview? |
| MCWHIRTER: | Then he asked for a lawyer. |
| DEFENSE ATTORNEY: | Your Honor, could we approach? |
| THE COURT: | Sure. |
| | (Conference at the bench). |
| PROSECUTOR: | I told him not to say that, but I am not going any further into that. |
| DEFENSE ATTORNEY: | Your Honor, at this time the Defendant would move for a mistrial based upon the last comment, was a violation of the Defendant's Miranda rights based upon the decision of Doyle versus Ohio, Your Honor. The State is not allowed to in any shape or form bring up the fact that he asked for a lawyer. We feel like this is an extremely prejudicial comment and we move for a mistrial. |
| THE COURT: | I am going to deny it for the time being, but during the lunch break, I want to look through that. I will let you know. |
| DEFENSE ATTORNEY: | Yes, sir. |

9

SLIP OPINION

(End of bench conference).

Later in the trial, the circuit court revisited the issue and again denied Sylvester's motion:

THE COURT:     All right. Well, here was the exact question that was asked, Question by [the Prosecutor], Did that conclude the interview? Answer: "then he asked for a lawyer."

So the answer or the response by the officer or the State Trooper was not responsive to the question that was asked. Also, I think it was or is this case is not similar to Doyle and there are several cases. Two of the most recent ones, one is Stevenson v. State at 213 ARK 100, and the other is Holden v. State, that is an '86 case, it is 290 ARK 458. In both of those cases the State told the jury in opening statements that the Defendant had invoked the right to counsel. Then, the Arkansas Supreme Court said, [t]he issue in Doyle was whether a State Prosecutor may seek to impeach a Defendant's exculpatory story told for the first time in the trial by cross examining the Defendant about his failure to have told the story after receiving his Miranda warnings. In Holden the specific legal argument on appeal is that it was a comment on the Defendant's right to remain silent, which can be prejudicial error. This Court stated that the legal issue to us is whether this was a comment on the right of the Defendant to remain silent or whether it was a prejudicial comment requiring a mistrial. We concluded that the case was not exactly the same as in Doyle. There was no direct reference by the State to the Defendant's silence or emphasis that the Defendant refused to make a statement. It was not cross examination emphasizing the Holden silence to the jury and unlike the situation in Doyle, in the Stephenson case was not cross examined regarding the assertion of the right to remain silent and there was no attempt to impeach Stephenson's account at the trial with the assertion of his Miranda rights.

So, your motion will be denied. They do make reference in some of the cases about a curative instruction. If you want me to say something to the jury to disregard the fact that a trooper said he asked for a lawyer . . . ?

. . . .

DEFENSE
ATTORNEY:          We appreciate the Court offering to, but, Your Honor, we would not ask for a curative instruction. . . . We feel like it could never be cured by a limiting instruction. . . . So, Your Honor, we will not ask for a limiting instruction.

Here, we agree with the circuit court that there was not a comment or question by the prosecutor regarding Sylvester's post-arrest silence. Instead, the witness's comment that Sylvester "asked for a lawyer" was not responsive to the question asked and did not directly refer to Sylvester's post-arrest silence. Additionally, the prosecutor did not comment on Sylvester's post-arrest silence in his argument to the jury. When a comment on a defendant's post-arrest silence is not an attempt to impeach the defendant, it is not the type of comment prohibited by the Court in *Doyle*. *Ferrell v. State*, 325 Ark. 455, 929 S.W.2d 697 (1996); *Davis v. State*, 345 Ark. 161, 176, 44 S.W.3d 726, 735 (2001). Therefore, the statement did not amount to a *Doyle* violation. *Greer*, 483 U.S. 756. Further, Sylvester refused a curative instruction to the jury. When the possible prejudice could have been cured by an admonition to the jury, this court has found no abuse of discretion when defense counsel has refused the circuit court's offer of such a curative instruction. *Ferguson v. State*, 343 Ark. 159, 33 S.W.3d 115 (2000). Accordingly, we do not find error and affirm the circuit court.

Affirmed.

*Victor D. "Trey" Wright III*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Jake H. Jones*, Ass't Att'y Gen., for appellee.