2017 Ark. 347

Kenneth Ray MARSHALL, Appellant

v.

STATE of Arkansas, Appellee

No. CR–16–63

Supreme Court of Arkansas.

Opinion Delivered: December 7, 2017

·Terrence Cain, Little Rock, for appellant.

Leslie Rutledge, Att'y Gen., by: Amanda Jegley, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Associate Justice

Kenneth Ray Marshall was convicted of aggravated residential burglary by a Columbia County jury on June 17, 2015, and was sentenced as a habitual offender to a term of life imprisonment.[1] For reversal, Marshall argues the circuit court erred when it denied his motion for a directed verdict because the State did not prove that he entered or remained in another person's residence with the specific intent to commit a criminal offense, nor did the State prove that he entered or remained in another person's residence while armed with a deadly weapon. We find no error and affirm.

On November 25, 2013, Robert Paschal and two female friends, Kelly Williams and Amy Hornaday, arrived at Paschal's home from a previous outing. Initially, Paschal entered his residence alone while the two women remained outside. Once inside his house, Paschal noticed that his television and his video-game console were out of place. The items were found on the kitchen floor rather than in his bedroom where he had placed them. At that time, Paschal went outside and told Williams and Hornaday that he believed someone had broken into his home. Both women accompanied Paschal into his home where he called 911.

Soon after placing the call, a man emerged from a room inside Paschal's home with a hammer in his hand. Paschal immediately identified this man as Kenneth Marshall. Paschal told both women to get out of the house, and Marshall followed the women out through the front door. Before leaving the scene, Marshall told Paschal that he was going to come back and kill him. At the time Marshall made this statement, he was holding the hammer in the air over his head. Marshall did not swing the hammer at either of the women or at Paschal. Before the Magnolia Police Department could respond, Marshall left Paschal's residence without further incident. Upon arrival, Detective Colton Burks processed the scene and discovered blood underneath a broken window in the southeast bedroom. Additionally, a blood smear was found on the television located on the kitchen floor. Williams, Hornaday, and Paschal all gave statements to the police regarding the events that took place.

At trial, Williams, Hornaday, and Paschal all testified consistently with the

---

1. Marshall was also tried for one count of commercial burglary and one count of first-degree terroristic threatening. The jury convicted Marshall of the commercial burglary and recommended a sentence of thirty years to run consecutively with his sentence of life imprisonment. The jury acquitted Marshall on the charge of terroristic threatening. Marshall addresses only his aggravated residential burglary conviction on appeal.

above stated facts. Williams also testified that even though Marshall did not swing the hammer at anyone present, she still "felt threatened with the object in [Marshall's] hand." Detective Burks testified that in addition to collecting the blood samples on the night of November 25, 2013, he also interviewed Marshall two days later. During the interview, Marshall admitted to having been in the house when Paschal arrived home.

Additional evidence regarding the blood samples was provided through the testimony of a technician employed by the Arkansas State Crime Lab. The testimony revealed that the blood sample taken from below the bedroom window was tested for a DNA profile and the result was a positive match to Kenneth Marshall "with all signs of scientific certainty."

At the conclusion of the State's case-in-chief, Marshall moved for a directed verdict on the count of aggravated residential burglary. Marshall contended the State did not prove that he was armed with a deadly weapon. The court denied his motion, stating that "the jury is going to be the fact finder on that." After the denial, Marshall took the stand. During his testimony, Marshall denied threatening Paschal, but admitted having been inside Paschal's house and having been in possession of the hammer. After the defense rested, Marshall moved to renew his motion for directed verdict. Again, the motion was denied. The jury returned a conviction for the charge of aggravated residential burglary.

### I. Sufficiency of the Evidence

Marshall's entire argument on appeal stems from his assertion that the circuit court erred in denying his motion for directed verdict. A motion for a directed verdict is treated as a challenge to the sufficiency of the evidence. *Brooks v. State*, 2016 Ark. 305, 498 S.W.3d 292. The test for determining the sufficiency of the evidence is whether the verdict was supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence of sufficient force and character that it compels a reasonably certain conclusion without resorting to speculation or conjecture. *Mercouri v. State*, 2016 Ark. 37, 480 S.W.3d 864. Determinations as to the credibility of the witnesses and resolutions of any inconsistent evidence are left to be made by the jury. *Starling v. State*, 2016 Ark. 20, 480 S.W.3d 158. The jury is free to believe all or part of any witness's testimony. *Id.* In reviewing a challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the State and consider only evidence that supports the verdict. *Mercouri, supra.*

On appeal, Marshall attempts to argue that the circuit court erred in denying his motion for directed verdict because the State failed in proving two separate elements of the crime of aggravated residential burglary. In pertinent part, to be convicted of aggravated residential burglary, a person must have (1) committed residential burglary as defined in Ark. Code Ann. § 5-39-201 while (2) armed with a "deadly weapon." A person commits residential burglary if he or she "enters or remains unlawfully in a residential occupiable structure of another person with the purpose of committing in the residential structure any offense punishable by imprisonment." Ark. Code Ann. § 5-39-201(a)(1) (Repl. 2013).

Essentially, Marshall's argument is that the State failed to prove Marshall committed residential burglary *or* aggravated residential burglary. However, Marshall preserved only one of those points for appeal—the argument that the State failed to prove that he entered or remained in another person's residence while armed with a deadly weapon. Ac-

cording to the Arkansas Rules of Criminal Procedure, a motion for a directed verdict "shall state the specific grounds," and "must specify the respect in which the evidence is deficient." Ark. R. Crim. P. 33.1(a) & (c) (2017). It is well settled that this court will not address arguments that are raised for the first time on appeal. *Sylvester v. State*, 2016 Ark. 136, 489 S.W.3d 146. Furthermore, parties are not permitted to change the grounds for an objection on appeal, but instead are bound by the nature and scope presented at trial. *Id.*

The following was the argument for directed verdict made at trial:

MARSHALL: Your Honor, I would move for a directed verdict on count three, aggravated residential burglary, on the basis that there is no substantial evidence that [I] entered or remained unlawfully in the residential structure of Robert Paschal while armed with a deadly weapon. Testimony was it was a hammer and as it was employed it was not a deadly weapon. So I would move for a directed verdict on that count.

STATE: Your Honor, the definition in the jury instructions about a deadly weapon and it's the State's position that an object ... it could be a bat or machete, it doesn't have to be a gun ... when it's raised in a person's house coupled with the threat I'm going to come back and kill you, the State's position is that is a jury question. The jury can make a determination whether it's a deadly weapon or not. We suggest it's enough to go to the jury.

MARSHALL: The testimony was all of that and the threat happened outside the house. It did not occur in the home.

Nowhere in Marshall's argument for directed verdict at trial did he contend that the State failed to prove that he entered or remained in the victim's residence with the specific intent to commit a criminal offense. Instead, this argument was raised for the first time on appeal. Because this claim was not the basis for his motion at trial, it was not preserved for appeal and is barred from review by this court. As such, the only remaining argument to address is whether the State proved that Marshall entered or remained unlawfully in another person's residence while armed with a deadly weapon.

A "deadly weapon" is defined as "anything that in the manner of its use or intended use is capable of causing death or serious physical injury." Ark. Code Ann. § 5–1–102(4)(B) (Repl. 2013). It is undisputed that the instrument at issue was a hammer. There are certainly many different "manner[s] of use" or "intended use[s]" that make a hammer capable of causing death or serious physical injury. *Id.* Therefore, as was correctly decided by the circuit court in this case, the question of fact of whether Marshall was armed with a deadly weapon is properly left for the jury.

The jury heard consistent testimony from three different individuals about Marshall's possession of the hammer and the nature in which he used it. All three stated Marshall emerged from a room inside Paschal's house with a hammer in his hand. At the time Marshall threatened to come back and kill Paschal, the hammer was not only in his hand, but was also raised in the air above his head. In addition, William's testimony was that she felt threatened by the object. Although Marshall testified that he did not threaten Paschal or use or intend to use the hammer as a deadly weapon, the jury was not obligated to believe any of Marshall's testimony. *Starling, supra.*

Marshall also argues on appeal that his acquittal on the charge of terroristic threatening proves the jury did not

actually believe that Marshall intended to kill or seriously injure Mr. Paschal or anyone else. He contends the jury rejected the charge because the State did not prove Marshall made the threat, but this argument is without merit. This court has held that "a jury may convict on some counts but not on others . . . because of compassion or compromise, and not solely because there was insufficient evidence of guilt." *Jordan v. State*, 323 Ark. 628, 917 S.W.2d 164 (1996). Additionally, the jury retains the freedom to exercise lenity when it believes that a conviction on one count is sufficient enough punishment. *Mercouri, supra.* Thus, viewing the evidence in the light most favorable to the State, it was reasonable for the jury to conclude from the circumstances that Marshall's intended use of the hammer was to cause death or serious physical injury.

## II. *Rule 4-3(i)*

As required by Arkansas Supreme Court Rule 4–3(i) (2017), the record has been reviewed for all objections, motions, and requests that were decided adversely to Marshall, and no prejudicial error has been found.

Affirmed.