Cite as 2022 Ark. 201

# SUPREME COURT OF ARKANSAS
No. CR-22-114

| | |
|---|---|
| | **Opinion Delivered:** November 10, 2022 |
| SHAWN CONE | APPEAL FROM THE CRAIGHEAD COUNTY CIRCUIT COURT |
| APPELLANT | [NO. 16JCR-19-1622] |
| V. | HONORABLE RANDY PHILHOURS, JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | |
| | AFFIRMED. |

**BARBARA W. WEBB, Justice**

Shawn Cone appeals from a jury verdict in the Craighead County Circuit Court finding him guilty of capital murder, abuse of a corpse, and theft of property for which he received consecutive sentences in the Arkansas Department of Corrections of life without parole, twenty years, and twelve years, respectively. He also was convicted of two counts of misdemeanor theft of property, the victim's cell phone and her 2016 Range Rover, for which he received one-year sentences.

On appeal, Cone only challenges his felony convictions. He argues that the circuit court (1) abused its discretion in violation of Arkansas Rules of Evidence 402 and 403 by admitting into evidence a list of countries that do not have extradition treaties with the United States; (2) erred in denying his motion to suppress evidence seized from his backpack because the warrant was not supported by probable cause, the warrant was a "General Warrant," and the court erroneously relied on his warrantless search waiver; (3) abused its discretion by admitting into

1

evidence photos taken by the medical examiner; and (4) erred in denying his directed-verdict motion on the charges of capital murder, abuse of a corpse, and theft of the victim's credit cards. Our jurisdiction is proper pursuant to Rule 1-2(a) of the Rules of the Supreme Court and Court of Appeals of Arkansas. We affirm.

I. *Synopsis*

This case arises from the December 2, 2019 murder of Alissa Reynolds in her Jonesboro residence, the subsequent abuse of her corpse, and postmortem use of her cell phone, credit cards, and automobile. Ms. Reynolds's live-in boyfriend, appellant Shawn G. Cone, a parolee, was charged with these crimes. Facebook messages showed that Ms. Reynolds ended the relationship on December 2.

The victim's body was discovered by police while conducting a second welfare check on December 8, 2019. Earlier in the day, police knocked on Ms. Reynolds's door but left when there was no answer. In the second welfare check later that evening, the officers approached the door and were greeted by the stench of decomposing flesh. There was no sign of a forced entry, and no one answered the door. Once police breached the door, Ms. Reynolds was found on a chaise lounge, covered in layers of bedding. It was subsequently determined that Ms. Reynolds was dressed in the same clothing that she had worn to work, and she was still wearing her work ID badge. Blood and other bodily fluids had soaked the towels and a blanket left beneath the chair.

Ms. Reynolds was last seen alive at work on December 2, 2019. Security cameras at her place of employment showed her leaving the Axis manufacturing facility in Paragould at 5:03 p.m. She was dressed in jeans and a pink pull-over top.

The victim's neighbor, Byron Holt, testified that he had a surveillance system set up at his residence during the week of December 2 through December 8, 2019. Before Ms. Reynolds returned home from work, Cone was recorded driving his Chevrolet Tahoe from the garage. When Ms. Reynolds arrived home at 5:38 p.m., she parked her white 2016 Range Rover in the garage. Cone arrived on foot ten minutes later. At 7:00 p.m., the Range Rover backed out of the garage. A short time later, Cone arrived alone at the Elks Lodge in Jonesboro. Cone returned to Ms. Reynolds's residence at 9:59 p.m.

Cone was shown to have been driving Ms. Reynolds's Range Rover and using her credit cards and cell phone, beginning shortly after what was determined to be the time of her death. On December 2, John Wood observed Cone driving Ms. Reynolds's Range Rover to the Elks Lodge, just after 7:00 p.m. Jeffery Powell testified that he saw Cone on December 6, at his residence, driving the Range Rover that day. Daniel Neal testified that Cone purchased beer at the Country Liquor Store using Ms. Reynolds's credit card on December 2. The manager of a Sprint store, Stevie Ivy, likewise testified that on December 6, Cone purchased a new cell phone, using Ms. Reynolds's credit card to cover the activation fee. On December 3 and 4, a call was placed on Ms. Reynolds's cell phone to her employer by a man who identified himself as Shawn, and claimed she was too ill to go to work. Testifying in his own defense, Cone confirmed that he had made these calls. He also had misled the victim's family and friends about her not being alive.

An autopsy revealed that Ms. Reynolds had been stabbed eighteen times and that she had also sustained numerous "cuts" caused by slashing. The medical examiner opined that the stab wounds were the cause of her death. It was determined that some of the wounds, particularly

3

the wounds on her hands, were defensive in nature. Additionally, the proximity of some of the stab wounds indicated to the medical examiner that they were inflicted while Ms. Reynolds was not moving because she was either unconscious or dead. According to the medical examiner, the state of decomposition of Ms. Reynolds's body indicated that she had been dead for more than a few days, which was consistent with her having died on December 2. Cone's DNA was found under Ms. Reynolds's fingernails.

On December 9, Cone was apprehended in Key West, Florida. Upon traveling to Florida, Detective Brian Arnold retrieved Cone's personal possessions, including a backpack, and transported the items to Jonesboro. Detective Arnold obtained a series of warrants encompassing the property in Cone's possession when he was detained by Florida authorities. The contents of the backpack included a printed list entitled "Countries with no extradition treaty with US" with a handwritten "CUBA" added and circled. Cone unsuccessfully moved prior to trial to suppress the contents of the backpack. Jonesboro Police Detective Keri Varner, an expert in cell phone data extraction, testified that she recovered Google searches on a phone used by Cone that queried about countries that do not have extradition treaties with the United States.

Prior to leaving Jonesboro, Cone had visited with friends Donny and Gina Tilton and told them that he was moving to Key West "because there was nothing left here for him." He showed the Tiltons a printed list of countries that have no extradition treaties with the United States. Cone told Gina that he wanted to leave the country because he did not want to go back to prison. According to Gina, she did not know the victim but asked Cone about his relationship to her. She testified, "I actually asked if Alissa was his girlfriend, and he stated that, no, she was

4

not. She actually probably hated him. She was just a very good person that knew if she kicked him out, he would be homeless, and so she had let him have a room in her house."

Cone also met with Stephanie Fagaley, a former girlfriend. Cone likewise talked about nonextradition treaty countries, including Cuba, the Maldives, and maybe Morocco. He said he was going to Key West, which Fagaley assumed meant "he was going to Cuba." Cone told her he wanted to leave because he did not want to go back to prison.

When Cone testified in his defense, he admitted that he could be seen on the neighbor's December 2, 2019 recording, approaching the home on foot and entering through the garage that evening. He also admitted that Ms. Reynolds was murdered that night but claimed he returned home from running errands to find the back door kicked in and Reynolds "a bloody mess." According to Cone, he did not call the police because he "knew what the automatic assumption was going to be." Instead, he covered Ms. Reynolds's body with blankets and pillows. On cross-examination, Cone further admitted that he and Ms. Reynolds got into an argument on the day of the murder. He acknowledged numerous Facebook messages on December 2, including Ms. Reynolds's message that she was "done with him." Cone admitted that he was the person seen in the neighbor's recordings, coming and going from Ms. Reynolds's home in the days after her murder. He admitted that he continued to stay in her home after her death until the police arrived to conduct the first welfare check on December 8, 2019. He testified, "[A]fter that, I thought it's either I'm leaving or I'm going to jail, so I hurriedly pack my things. I say goodbye [to Ms. Reynolds and their dogs] and I leave." He left his passport behind in a vehicle in Jonesboro. Cone also admitted using Ms. Reynolds's phone after her death to text and to communicate with her friends and family, pretending to be her, as well as lying about Ms.

5

Reynolds's being in a car wreck and hospitalized. He admitted calling Ms. Reynolds's work supervisor, Melissa Henson, on December 3 and 4, the days directly following the murder, to report that Ms. Reynolds had the flu, and texting updates about her absence. He admitted that leaving the country was a "possibility of a plan at first" or "still a possibility," when he told the Tiltons about it. Cone admitted using Ms. Reynolds's Range Rover after her death, and he parked and left it, heavily damaged, at the Memphis airport. He also admitted using Ms. Reynolds's credit cards after her death.

Although this case was made largely with circumstantial evidence, Cone was convicted as charged.

## II. *Sufficiency of the Evidence*

In accordance with our usual practice, before we take up Cone's points on appeal concerning evidentiary issues, we first consider Cone's argument that the circuit court erred when it denied his directed-verdict motion on the charges of capital murder, abuse of a corpse, and theft of Ms. Reynolds's credit cards. In pertinent part, at trial, Cone made the following directed-verdict motions: As to count one, capital murder, Cone argued lack of any "direct evidence that there has been any premeditated or deliberated purpose . . . or that he was the one who stabbed the victim [and] [a]ny evidence that the State has put forth on Capital Murder has been purely speculative in relation to the defendant." As to abuse of a corpse, count two, Cone argued that "the State has failed to meet its burden [as they have] only put on evidence allegedly showing the defendant coming and going from the house [and] [a]t most, this amounts to failure to report [and] [t]here has been no evidence of mistreating or concealing the corpse." Without making any additional substantive argument in support, Cone also moved for a directed verdict

6

on count five, theft of Ms. Reynolds's credit cards. The circuit court denied all of these motions.

When we review the denial of a directed-verdict motion challenging the sufficiency of the evidence, we view the evidence in the light most favorable to the verdict. *Holly v. State*, 2017 Ark. 201, 520 S.W.3d 677. That means we consider only the evidence that supports the verdict and determine whether the verdict is supported by substantial evidence. *Id.* Substantial evidence is evidence of sufficient certainty and precision to compel a conclusion one way or the other and pass beyond mere suspicion or conjecture. *Id.* To be substantial, the circumstantial evidence must exclude every reasonable hypothesis other than the accused's guilt. *Kellensworth v. State*, 2021 Ark. 5, 614 S.W.3d 804. The question whether circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide. *Id.*

## A. Capital Murder

On appeal, Cone argues that the State only presented circumstantial evidence, and the mere fact that he was seen coming and going from Ms. Reynolds's house; used her car, phone, and debit card; and was arrested in Key West does not mean he was guilty of capital murder. He asserts that he faced unrelated theft charges pending since May 2019, which was the reason he contemplated leaving Jonesboro. Further, Cone noted Detective Arnold's testimony that there were other vehicles seen at Ms. Reynolds's house that had not been investigated. Cone argued that the jury verdict was the result of "surmise and conjecture," and therefore, this court should reverse the conviction. We are not persuaded.

A defendant commits capital murder, if, with the premeditated and deliberated purpose of causing the death of another person, he causes the death of any person. Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2019). Premeditated and deliberated murder occurs when the killer's

7

conscious object is to cause death, and he forms that intention before he acts and as a result of a weighing of the consequences of his course of conduct. *Brooks v. State*, 2016 Ark. 305, at 6, 498 S.W.3d 292, 296. Premeditation may be formed in an instant and is rarely capable of proof by direct evidence. *Id.* Thus, a jury may infer premeditation and deliberation from the circumstantial evidence. *Keesee v. State*, 2022 Ark. 68, at 3, 641 S.W.3d 628, 633.

We hold that there is substantial evidence of both the identity of the perpetrator and the culpable mental state. By Cone's own admissions, he and Ms. Reynolds quarreled on the day of the murder. Ms. Reynolds's Facebook messages indicated that her relationship with Cone had ended on December 2. However, Cone continued to live at her residence. Contrary to Cone's claims, Officer Jason Chester, who participated in the December 8 welfare check on Ms. Reynolds's home, reported no evidence of the door having been kicked in. Officer Chester's testimony was corroborated by bodycam footage admitted into evidence. Further, the autopsy revealed that many of the wounds that Ms. Reynolds sustained were defensive wounds, and Cone's DNA was found under her fingernails. Additionally, Ms. Reynolds was wearing the clothing that she wore to work, and surveillance video provided by Byron Holt placed Cone at the residence---and no one else---shortly after Ms. Reynolds returned from work. Further, evidence of Cone's flight to Key West, his desire to flee the United States to a country with which we do not have an extradition treaty, and Cone's lying to Ms. Reynold's employer and family are evidence of Cone's consciousness of guilt. Taken together, it provides substantial evidence of Cone's identity as the perpetrator.

Regarding the culpable-mental-state element, premeditation and deliberation, the medical examiner testified that Ms. Reynolds had been stabbed eighteen times and had multiple

8

other cuts, including a cluster of eight repeated stab wounds to her chest, and a fatal wound to her neck. The number of stab wounds indicates a prolonged struggle and repeated application of deadly force. From the nature and the extent of the wounds alone, the jury could infer the premeditation and deliberation necessary for a conviction of capital murder. *See Fudge v. State*, 341 Ark. 759, 767–68, 20 S.W.3d 315, 319–20 (2000).

## B. Abuse of a Corpse

Cone argues that the identity of the perpetrator for the abuse-of-a-corpse count is not substantial for the same reason that he challenges the identity element in the capital-murder count. We likewise find this argument unpersuasive. The offense of "Abuse of a Corpse" is codified under Arkansas Code Annotated section 5-60-101 as follows:

(a) A person commits abuse of a corpse if, except as authorized by law, he or she knowingly:

(1) Disinters, removes, dissects, or mutilates a corpse; or

(2)(A) Physically mistreats or conceals a corpse in a manner offensive to a person of reasonable sensibilities.

(B) A person who conceals a corpse in a manner offensive to a person of reasonable sensibilities that results in the corpse remaining concealed is continuing in a course of conduct under § 5-1-109(e)(1)(B).

(C)(i) As used in this section, "in a manner offensive to a person of reasonable sensibilities" means in a manner that is outside the normal practices of handling or disposing of a corpse.

(ii) "In a manner offensive to a person of reasonable sensibilities" includes without limitation the dismembering, submerging, or burning of a corpse.

(b) Abuse of a corpse is a Class C felony.

The evidence adduced at trial indicates that Cone not only murdered the victim, but

also, he alone was present when her lifeless body was concealed. Cone himself confirmed that he was the person captured on his neighbor's surveillance camera, proving that Cone was the only person with access to Reynolds's body. Accordingly, the jury could conclude that he alone had the motive and opportunity to conceal the victim in her residence by covering her with bedding. Likewise, Cone's decision to leave Ms. Reynolds on the chaise lounge, decomposing, could reasonably be found by a jury to be a course of conduct that would be offensive to a person of reasonable sensibilities. *See id.* Finally, there is no evidence that anyone else was present to conceal Reynolds's lifeless body while he continued to live at her residence.

## C. Theft of Property

Cone was charged with three counts of theft of property arising from his use of Ms. Reynolds's Range Rover, cell phone, and credit cards. The counts involving the Range Rover and cell phone were reduced to misdemeanors and are not covered by Cone's appellate brief. Regarding Ms. Reynolds's credit cards, Cone argued that the State failed to prove that his use of Ms. Reynolds's credit cards was unauthorized because he lived with her. He contended that unauthorized use was therefore purely speculative. In denying Cone's directed-verdict motion, the circuit court noted that in her Facebook messages,
Ms. Reynolds made it clear that she had broken up with Cone on the day of her death. For his argument on appeal, Cone merely recites the argument he made to the circuit court.

The crime of "Theft of Property of a Credit or Debit Card" is codified at Arkansas Code Annotated section 5-36-103(a)(1), which states in pertinent part that "[a] person commits theft of property if he or she knowingly takes or exercises unauthorized control over or makes an unauthorized transfer of an interest in the property of another person with the purpose of

depriving the owner of the property." We hold that there is substantial evidence of unauthorized use of the credit cards.

The evidence presented at trial was that Cone used Ms. Reynolds's credit cards after her demise. Further, Gina Tilton testified that Cone had stated that the victim "probably hated him," which, given its greatest probative force, provides a substantial basis for the jury to conclude that Cone's use of Ms. Reynolds's credit cards was not permissive. Further, as the circuit court noted, she had made it clear just prior to her death that she had broken up with Cone. Evidence that Cone had used the cards after Ms. Reynolds's death is substantial evidence that he did not have her consent to use them.

III. *Admission of the List of Countries Having No Extradition Treaties with the United States*

Cone argues that the circuit court abused its discretion by admitting into evidence a list of countries that do not have extradition treaties with the United States in violation of Arkansas Rules of Evidence 402 and 403. The list was found in a backpack that Cone was carrying at the time of his arrest. Cone moved in limine to exclude the list as not relevant and more prejudicial than probative. The circuit court admitted the list subject to the State's presenting admissible testimony concerning what Cone told the Tiltons and Fagaley regarding his plans to flee the country.

Cone argues that admission of the list was an abuse of discretion because there was no evidence presented that he had any intention of going to Cuba, and that notion is purely speculative. Arguing further, Cone asserts that the evidence showed that Cone was very open about where he was going and that he had no intention of going to Cuba. He further notes that he left his passport behind when he boarded his flight to Key West.

11

The State asserts that this issue is not preserved for our review. It argues that when a trial court's ruling is a qualified one, the defendant must renew his objection at trial, contemporaneous with the alleged error, in order to preserve it. It contends that in the case before us, the trial court conditioned admission of the list on the State's representation of what the trial testimony would be, and Cone did not raise a contemporaneous objection when Gina Tilton was the first witness at trial to testify about the list. Cone did not object until after Stephanie Fagaley's testimony. Citing *Ward v. State*, 370 Ark. 398, 260 S.W.3d 292 (2007), the State asserts that Gina Tilton's testimony about the list bars review of Cone's claim. We agree.

It is settled law under our preservation jurisprudence that when a conditional ruling is made at trial based on the representation of what certain evidence will be, a contemporaneous objection is required to preserve the issue for our review. *Id.* (citing *Byrum v. State*, 318 Ark. 87, 884 S.W.2d 248 (1994); *Alexander v. State*, 335 Ark. 131, 983 S.W.2d 110 (1998)). Accordingly, this issue is not preserved for our review.

IV.*Suppression of Evidence in Cone's Backpack*

Jonesboro Police Detective Brian Arnold testified during the hearing on Cone's motion to suppress the evidence contained in Cone's backpack. Detective Arnold stated that when Cone deplaned in Key West, he was arrested by deputies from the Monroe County Sheriff's Department. Cone was carrying a blue backpack as his carry-on luggage. The deputies did not search the backpack but instead just seized it and held it in their evidence room.

Arnold prepared two warrants. The first was directed at the Monroe County Sheriff's Department, asking that the backpack be released to the Jonesboro police. The second was a request to search the backpack once it was in the possession of the Jonesboro police. Detective

Arnold further testified that he was aware that Cone was on parole, and Cone had executed a warrantless search waiver pursuant to Arkansas Code Annotated section 16-93-106.

At the hearing, Cone argued that the contents of the backpack should be suppressed, claiming that the affidavit supporting the warrant was inadequate because it did not establish probable cause to search. In disposing of Cone's suppression motion, the circuit court found the warrant to be sufficient:

> The affidavit supporting the application for the warrant states that on December the 8th officers were dispatched to the pertinent address for a welfare check. Officers discovered a deceased body of a female victim, who was later identified, inside that residence. She had multiple cuts on her body with blood on her body and clothing. Shawn Cone could have sustained an injury during the attack causing blood transfer to the victim. Detectives were able to develop Shawn Cone as a suspect. Shawn Cone fled the area by flying to Key West where he was arrested on 12-9-19 the very next day. He had a large suitcase and a blue backpack. By the time this search warrant was sought, the officers knew that there were cell phones, credit cards, debit cards, and the clothing he was wearing inside those, the backpack and the suitcase. While it could have been more detailed, I think the dates that they use are very pertinent. I think the statement that she had cuts on her body and clothing and because he was a suspect he could have had blood on his clothing plus the fact that they already knew because of its inventory by the Monroe County Florida people. I think that makes the warrant sufficient. It's certainly good faith because the thing is for Judge Boling when he signed this, first, was there any false information in the affidavit? No. Did the magistrate have to give up his neutrality or did he manifest that neutrality? Seems to me like he did. Substantial basis must be provided enough to establish probable cause. I think that happened.

Cone argues that the circuit court erred in denying his motion to suppress evidence seized from his backpack because the warrant was not supported by probable cause, the warrant was a "General Warrant," and it erroneously relied on his warrantless search waiver. We disagree.

On review of a circuit court's denial of a motion to suppress evidence, we conduct an

independent inquiry based on the totality of the circumstances, evaluating findings of historical facts for clear error. *Thomas v. State*, 2020 Ark. 154, 598 S.W.3d 41. We give due weight to inferences drawn by the circuit court, and we will reverse the circuit court only if the ruling is clearly against the preponderance of the evidence. *Id.*

The particularity requirement of a search warrant is stated in Rule 13.2 of the Arkansas Rules of Criminal Procedure:

(b) The warrant shall state, or describe with particularity:

(i) the identity of the issuing judicial officer and the date and place where application for the warrant was made;

(ii) the judicial officer's finding of reasonable cause for issuance of the warrant;

(iii) the identity of the person to be searched, and the location and designation of the places to be searched;

(iv) the persons or things constituting the object of the search and authorized to be seized; and

(v) the period of time, not to exceed five (5) days after execution of the warrant, within which the warrant is to be returned to the issuing judicial officer.

(c) Except as hereafter provided, the search warrant shall provide that it be executed between the hours of six a.m. and eight p.m., and within a reasonable time, not to exceed sixty (60) days. Upon a finding by the issuing judicial officer of reasonable cause to believe that:

(i) the place to be searched is difficult of speedy access; or

(ii) the objects to be seized are in danger of imminent removal; or

(iii) the warrant can only be safely or successfully executed at nighttime or under circumstances the occurrence of which is difficult to predict with accuracy; the issuing judicial officer may, by appropriate provision in the warrant, authorize its execution at any time, day or night, and within a reasonable time not to exceed sixty (60) days from the date of issuance.

14

(d) If the warrant authorizes the seizure of documents other than lottery tickets, policy slips, and other nontestimonial documents used as instrumentalities of crime, the warrant shall require that it be executed in accordance with the provisions of Rule 13.5 and may, in the discretion of the issuing judicial officer, direct that any files or other collections of documents, among which the documents to be seized are reasonably believed to be located, shall be impounded under appropriate protection where found.

Highly technical attacks on search warrants are not favored. *Watson v. State*, 291 Ark. 358, 724 S.W.2d 478 (1987). In *Illinois v. Gates*, 462 U.S. 213 (1983), the Supreme Court held that a practical, common sense decision based on all the circumstances is sufficient if "there is a fair probability that contraband or evidence of a crime will be found in a particular place." Under *Gates*, our duty as a reviewing court is simply to ensure that the magistrate issuing the warrant had a substantial basis for concluding that probable cause existed. *Id.*

In the case before us, the object to be searched, Cone's backpack, was described with particularity. Further, the magistrate issuing the warrant was apprised of the nature of the murder, so there was probable cause to believe that blood transference was in the contents of the backpack that Cone was carrying during his flight to Key West. Further, it had been determined that Cone was carrying the victim's credit cards at the time of his arrest, so the presence of other stolen property was likely to be in the backpack that Cone carried onto the plane. Because we conclude that the warrant was sufficient to authorize the search of Cone's backpack, we need not consider his argument concerning the parolee search waiver.

*V. Admission of the Autopsy Photos*

Cone argues that the circuit court abused its discretion by admitting into evidence photos taken by the medical examiner. Over Cone's objection, the medical examiner relied on selected photographs to assist in his testimony about Ms. Reynolds's injuries and the abuse of her corpse.

15

An initial photograph was used to orient the jury to the upper half of Ms. Reynolds's body, where all the wounds were located. The other sixteen photographs demonstrated individual or close clusters of wounds. One of the photographs depicted cuts to Ms. Reynolds's hands and forearms, which the medical examiner identified as "defensive-type wounds." Another showed eight stab wounds to Ms. Reynolds's upper chest, as well as wounds to her neck and mouth. Due to the proximity of the wounds, the medical examiner opined, Ms. Reynolds was stabbed repeatedly while she could not move because she was being held down, was unconscious, or was dead. Ms. Reynolds also had four stab wounds to her neck, and a photo depicted the damage to her left jugular vein and left carotid artery, which was likely a fatal wound. The medical examiner also testified about the decomposition shown in some photographs, including discolorations or places in which the skin was slipping off with the epidermis coming away from the dermis, which indicated that Ms. Reynolds had been dead for "more than a few days" prior to the examination and was consistent with her death occurring on December 2, 2019.

Although the circuit court ordered the State to attempt to compromise with the defense on a limited collection of photos, Cone objected to the admission of all autopsy photographs, arguing that admitting them violates Arkansas Rule of Evidence 403, which provides that "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Cone notes that prior to the medical examiner's testimony, the circuit court gave the following warning to those watching the trial:

I have been involved in trying criminal cases in one form of another since

16

1985. I've seen a lot of bad stuff personally, and I've seen a lot of worse pictures. I'm led to believe these are going to be the worst ever. . . . If you don't think you can handle [the pictures], I understand, and I will allow you to get up and go and come back as soon as the pictures are over.

Cone argues that in this particular case, the autopsy photographs were especially gruesome and that they are extremely prejudicial and have no probative value. He urges this court to find analogous *Berry v. State*, 290 Ark. 223, 718 S.W.2d 447 (1986), in which the *Berry* court reversed a capital-murder conviction based on the admission of autopsy photos. We disagree.

The admission of photographs is a matter left to the sound discretion of the circuit court. *Airsman v. State*, 2014 Ark. 500, at 17, 451 S.W.3d 565, 575. When photographs are helpful to explain testimony, they are ordinarily admissible, and even the most gruesome photographs may be admissible if they assist the trier of fact. *Id.* at 17–18, 451 S.W.3d at 575.

The mere fact that a photograph is inflammatory or is cumulative is not, standing alone, sufficient reason to exclude it. If a photograph serves no valid purpose and could be used only to inflame the juror's passion, it should be excluded; it is only when an inflammatory or gruesome photograph is without any valid purpose that it should be excluded. *Jones v. State*, 336 Ark. 191, 984 S.W.2d 432 (1999).

Cone's reliance on *Berry*, *supra*, is misplaced. In *Berry*, the prosecuting attorney introduced nine graphic photographs of extensive injuries to the victim's face--some taken to emphasize those injuries--which were accepted by the circuit court without exception. *Id.* The appellant objected that the photographs were not relevant in that the brutality of the murder, the cause of death, and the perpetrator of the injuries were all admitted by the appellant, and it

17

was uncontradicted that the appellant never touched the victim. *Id.* The *Berry* court held that any probative value of the photographs was outweighed by prejudice and that most were merely cumulative. In the case before us, the photographs were carefully tied to the medical examiner's testimony. Furthermore, because Cone was charged with abuse of a corpse, the state of the Ms. Reynolds's body, postmortem, was extremely relevant. Accordingly, we hold that the circuit court did not abuse its discretion in admitting the autopsy photos.

VI.     *Arkansas Supreme Court Rule 4-3(a) Review.*

In compliance with Arkansas Supreme Court Rule 4-3(a), we have examined the record for all objections, motions, and requests made by either party that the circuit court decided adversely to the appellant. We have found no prejudicial error warranting reversal.

Affirmed.

Special Justice GREG MAGNESS joins.

BAKER, J., concurs.

WOMACK, J., not participating.

*Erin W. Lewis*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *David L. Eanes, Jr.*, Ass't Att'y Gen., for appellee.