Cite as 2023 Ark. 65

# SUPREME COURT OF ARKANSAS

No. CR-22-414

| | |
|---|---|
| JOE BERNARD NOWELL | **Opinion Delivered:** April 20, 2023 |
| APPELLANT | |
| | APPEAL FROM THE FAULKNER |
| V. | COUNTY CIRCUIT COURT |
| | [NO. 23CR-18-1172] |
| STATE OF ARKANSAS | HONORABLE CHARLES E. CLAWSON |
| | III, JUDGE |
| APPELLEE | |
| | AFFIRMED. |

**ROBIN F. WYNNE, Associate Justice**

Joe Nowell was convicted of capital murder and sentenced to life imprisonment without parole. On appeal, Nowell argues that (1) the trial court erred by denying his motion to suppress evidence collected from the search of his property on September 8, 2018; and (2) the trial court's failure to instruct the jury with the model verdict form on disputed accomplice status was reversible error under the third and fourth exceptions from *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980). We affirm.

I. *Background*

On July 24, 2018, two fishermen discovered a man's body floating in Cadron Creek in Faulkner County. The victim's body was splayed open from the chest to the lower abdomen, and his throat had been slit. Fingerprints identified the victim as William Holt. Investigators linked Holt to an address of 46B Berry Gap Lane in Conway, an address also

linked to Joe Nowell. On July 25, officers from the Faulkner County Sheriff's Office executed a search warrant at 46B Berry Gap Lane and spoke with Nowell and his girlfriend, Jessica Eiss, who both lived at 46A Berry Gap Lane. Investigators later discovered that Holt, who was homeless, had Social Security benefits mailed to 46B Berry Gap Lane and that someone claiming to be Holt's roommate had called the Social Security office on July 25 to report that Holt was no longer living at that address. They also learned that Holt's bank account named Nowell as a power of attorney and Eiss as a beneficiary. In late August, the Arkansas State Crime Laboratory determined that DNA on a cigarette found at the crime scene did not match Holt. Law enforcement obtained Nowell's DNA on September 4 for testing.

Days later, on September 8 at around 10:59 a.m., Eiss's mother called the Faulkner County Sheriff's Office after she received a suicide note dated September 5 from Eiss in the mail. Two officers, Andrew Dixon and Tonya Force, arrived at Nowell's Berry Gap Lane property to do a welfare check around 11:19 a.m., twenty minutes after they were called. Officer Force spoke with Eiss's mother and viewed a picture of the suicide note. When the officers arrived, they entered the residences at 46 and 46A Berry Gap Lane but did not find anyone inside. When the officers approached the trailer at 46B, Officer Force noticed a dog tied to a tree and a fifty-pound bag of dog food dumped out in front of it. The officers entered the trailer at 46B and noticed that one bedroom door was locked and appeared to be barricaded from the inside. The officers heard music playing in the room and noticed electrical cords running under the door and the window air conditioner running. After knocking on the door and getting no response, Officer Dixon called the on-call investigator,

2

and they decided to breach the door. In the room, the officers discovered Nowell and Eiss lying in bed. Nowell was unconscious, and Eiss appeared to be lethargic.

The officers contacted emergency medical personnel, who were waiting nearby. Paramedics took Nowell and Eiss to the hospital for treatment. Law enforcement observed prescription medication and several handwritten suicide notes in the bedroom and on Nowell. They obtained a search warrant for Nowell's property later that day.

Before trial, Nowell moved to suppress evidence collected during the September 8 search, arguing that law enforcement illegally searched his property before obtaining a search warrant and that the affidavit in support of the warrant failed to establish probable cause. After a hearing, the trial court denied the motion to suppress, concluding that the officers were in the structure lawfully under exigent circumstances and that the warrant was supported by probable cause.

At trial, Eiss testified that she went with Nowell and Holt to the creek on July 24 after Nowell hit Holt on the head with a shotgun during an argument. Eiss said that she stayed in the car and played on her phone while the men walked to the creek bank. She said that Nowell returned to the car alone, covered in blood, and that they returned to the Berry Gap Lane property where Nowell washed up. Eiss said she hid the shotgun in a well at Nowell's direction. At the close of trial, defense counsel sought a jury instruction on Eiss's disputed accomplice status along with the accompanying verdict form. After some discussion with the prosecution, defense counsel withdrew the verdict form and did not proffer it. The trial court instructed the jury as to disputed accomplice status but did not submit the verdict form. The

3

jury convicted Nowell of capital murder, and he was sentenced to life imprisonment without parole. Nowell timely appealed.

## II. *Motion to Suppress*

First, Nowell argues that the trial court erred by denying his motion to suppress evidence obtained during the September 8 search of his property. In reviewing a denial of a suppression motion, this court makes an independent examination based on the totality of the circumstances, viewing the evidence in the light most favorable to the State, and we reverse only if the trial court's ruling was clearly against the preponderance of the evidence. *Smith v. State*, 2022 Ark. 95, at 10.

Nowell contends that the alleged suicide threat did not establish probable cause that an immediate exigency warranted the initial police entry onto his property on September 8. He argues that law enforcement entered his property under the guise of a welfare check and that a suicide note dated three days before the entry did not indicate that anyone was in imminent danger. According to Nowell, the welfare check was merely a ruse for officers to enter his property without a warrant.

Warrantless searches in private homes are presumptively unreasonable, and the burden is on the State to prove that the warrantless search was reasonable. *Baird v. State*, 357 Ark. 508, 513, 182 S.W.3d 136, 140 (2004). Under Arkansas Rule of Criminal Procedure 14.3(a), "[a]n officer who has reasonable cause to believe that premises or a vehicle contain . . . individuals in imminent danger of death or serious bodily harm . . . may, without a search warrant, enter and search such premises and vehicles, and the persons therein, to the extent

4

reasonably necessary for the prevention of such death, bodily harm, or destruction." We have held that any search that follows the emergency entry may be upheld under this rule only if the search was reasonably necessary for the prevention of such death or bodily harm and is "strictly circumscribed by the exigencies" that necessitated the emergency entry in the first place. *Wofford v. State*, 330 Ark. 8, 19, 952 S.W.2d 646, 651 (1997) (citing *Mincey v. Arizona*, 437 U.S. 385, 393 (1978)). The police may seize evidence that they observe in plain view while conducting "legitimate emergency activities." *Id.* The emergency exception does not depend on the officers' subjective intent or the seriousness of any crime they are investigating; rather, it requires only an objectively reasonable basis for believing that a person within the house is in need of immediate aid. *Miller v. State*, 2010 Ark. 1, at 5, 362 S.W.3d 264, 271 (citing *Michigan v. Fisher*, 558 U.S. 45 (2009) (per curiam)). While officers do not need "ironclad proof of a likely serious, life-threatening injury" to invoke this exception, there must be an objectively reasonable basis for believing that medical assistance was needed or persons were in danger. *Id.*

Based on the totality of the circumstances, we conclude that the officers had an objectively reasonable basis for believing that people on Nowell's property were in danger. Law enforcement arrived at the property about twenty minutes after Eiss's mother called to report that she had received a suicide note from Eiss. One officer spoke with Eiss's mother and viewed the suicide note. The officers searched two of the structures on the property and found no one inside. When the officers entered the trailer at 46B, they noticed that one bedroom door was locked and appeared to be barricaded from the inside. They saw electrical

cords running under the door and noticed that the window air conditioner was running. One officer called the on-call investigator after knocking on the door and getting no response. It was only then that the officers decided to breach the door, where they discovered Nowell unconscious and Eiss lethargic. Given these circumstances, we uphold the emergency search as reasonably necessary for the prevention of death or bodily harm.

Nowell further argues that the search warrant was not supported by probable cause to believe that there was evidence of a homicide that the police had been investigating for several weeks. He contends that the facts in the affidavit offered little more than law enforcement's suspicion that Nowell was connected to Holt's murder. Nowell argues that the connections to Holt recited in the affidavit—that Holt lived on Nowell's property, that Nowell was the last person to see Holt alive, that Nowell had a personal and financial relationship with Holt, and that Nowell and Eiss had written notes referencing the homicide investigation before they attempted suicide—did not establish probable cause.

Under Arkansas Rule of Criminal Procedure 13.1(b), an "application for a search warrant shall describe with particularity the persons or places to be searched and the persons or things to be seized[.]" The application must be supported by affidavit or testimony before a judicial officer "particularly setting forth the facts and circumstances tending to show that such persons or things are in the places, or the things are in possession of the person, to be searched." *Id.* "An affidavit or testimony is sufficient if it describes circumstances establishing reasonable cause to believe that things subject to seizure will be found in a particular place." *Id.* The task of the judge issuing a warrant is simply to make a practical, common-sense

decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *King v. State*, 2019 Ark. 114, at 5, 571 S.W.3d 476, 479. Our duty as a reviewing court is simply to ensure that the magistrate issuing the warrant had a substantial basis for concluding that probable cause existed. *Cone v. State*, 2022 Ark. 201, at 15, 654 S.W.3d 648, 659.

We conclude that the September 8 search warrant was supported by probable cause. The affidavit stated that Holt lived at 46B Berry Gap Lane, which was owned by Nowell. It stated that Nowell helped Holt open a bank account that listed Nowell's phone number as the primary phone number and that Nowell was made power of attorney on the account. The affidavit stated that Nowell said that he and Holt had had an argument shortly before Holt was last seen. It also stated that Nowell was the last person to see Holt before his body was found. Further, the affidavit stated that law enforcement found notes suggesting a suicide attempt in the room where Nowell and Eiss were found and that one note indicated that Nowell and Eiss were implicated in a homicide investigation. Given all the circumstances set forth in the affidavit, there was a fair probability that evidence of a crime would be found on Nowell's property. Because the initial police entry was reasonably necessary for the prevention of death or bodily harm and the search warrant was supported by probable cause, the trial court did not err in denying the motion to suppress.

III. *Jury Instruction*

Next, Nowell argues that the trial court's failure to instruct the jury with the AMI Crim. 2d verdict form on accomplice status in dispute was reversible error. At trial, defense

7

counsel sought a jury instruction on Eiss's disputed accomplice status (AMI Crim. 2d 403) along with its accompanying verdict form (AMI Crim. 2d 403.1-VF). The prosecutor questioned whether the verdict form was a model instruction. He took issue with definitions on the form but said he would not object to the verdict form without the definitions. Defense counsel then stated that he no longer sought to submit the verdict form, and he did not proffer it. The trial court gave the jury the model instruction on accomplice status in dispute, instructing the jury that, if it found that Eiss was an accomplice, it could not convict Nowell on Eiss's testimony unless that testimony was corroborated by other evidence connecting Nowell to the murder. The trial court did not submit the verdict form to the jury.

It is well settled that counsel must object and proffer a jury instruction in order to appeal the instructions given to the jury. *Douglas v. State*, 2017 Ark. 70, at 4, 511 S.W.3d 852, 855. In *Wicks*, 270 Ark. 781, 606 S.W.2d 366, this court recognized four "extremely narrow and strictly guarded exceptions" to the objection requirement. *Camargo v. State*, 327 Ark. 631, 640, 940 S.W.2d 464, 469 (1997). Relevant here, the third exception applies when the "error is so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury correctly," while the fourth involves evidentiary issues affecting the appellant's substantial rights. *Douglas*, 2017 Ark. 70, at 4–5, 511 S.W.3d at 855.

Nowell acknowledges that trial counsel withdrew the verdict form and did not proffer it. Nonetheless, he urges this court to find reversible error under a hybrid of the third and fourth *Wicks* exceptions. He contends that the trial court had a duty to submit the verdict

8

form as a companion to the disputed-accomplice-status instruction because it implicated Nowell's substantial right not to be convicted on accomplice testimony without the jury's determination that the testimony was adequately corroborated.

We decline to apply either *Wicks* exception to the objection requirement under the circumstances presented in this case. The trial court instructed the jury on Eiss's disputed accomplice status. Not submitting the accompanying verdict form—after defense counsel withdrew his request to submit it—is not an error "so flagrant and so highly prejudicial in character as to make it the duty of the court on its own motion to have instructed the jury correctly." *Id*. Accordingly, the third *Wicks* exception does not apply. *See id.* (declining to apply third *Wicks* exception to jury-instruction error on direct appeal). As noted above, the fourth exception involves evidentiary errors. The issue here is an alleged failure to instruct the jury properly—not an evidentiary error—so the fourth *Wicks* exception does not apply either. *See id.* at 5, 511 S.W.3d at 855 (declining to apply fourth *Wicks* exception to jury-instruction error on direct appeal). Because no exception to the objection requirement applies, we decline to review the jury-instruction issue.

## IV. *Rule 4-3(a) Review*

In compliance with Arkansas Supreme Court Rule 4-3(a), we have examined the record for all objections, motions, and requests made by either party that were decided adversely to Nowell. No prejudicial error has been found.

Affirmed.

*David R. Raupp*, Arkansas Public Defender Commission, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Sr. Ass't Att'y Gen., for appellee.