Cite as 2024 Ark. 128

# SUPREME COURT OF ARKANSAS
**No.** CR-23-203

| | | |
|---|---|---|
| | | **Opinion Delivered:** September 19, 2024 |
| BOBBY WYLES | APPELLANT | APPEAL FROM THE PERRY COUNTY CIRCUIT COURT [NO. 53CR-19-10] |
| V. | | |
| STATE OF ARKANSAS | APPELLEE | HONORABLE ANDREW GILL, JUDGE |
| | | AFFIRMED. |

**SHAWN A. WOMACK, Associate Justice**

Bobby Wyles was convicted of two counts of capital murder in the presence of two children by a Perry County jury in September 2022. Wyles was sentenced to two consecutive sentences of life without parole, plus two five-year sentences for the presence-of-a-child enhancements. For his sole argument on appeal, Wyles claims the Perry County Circuit Court erred in denying his two motions for a directed verdict. Specifically, Wyles claims he lacked the culpable mental state to be convicted of either the capital or the first-degree murder of Jerry Drinkwater and Susie Fuller. Because substantial evidence supports Wyles's capital-murder convictions, we must affirm.

## I.  *Factual Background*

On January 5, 2019, Bobby Wyles killed Susie Fuller and her brother, Jerry Drinkwater, in a violent incident. Mr. Wyles was longtime friends with Fuller and Drinkwater, and they frequently did drugs together. On the night of the killings, Wyles

was visiting the victims at a house they shared with their mother. The three individuals were hanging out and doing drugs in a bedroom before Mr. Wyles ultimately stabbed Fuller and Drinkwater to death in front of their mother and Fuller's two children.

At some point in the evening, after the three individuals did meth and other drugs, an argument ensued between Wyles and Fuller. According to eyewitness testimony from the victims' mother, Shirley McCoy, the argument started after Wyles shot Fuller with a BB gun. Wyles claims the argument started after Drinkwater had sexually assaulted him while he was unconscious because of the drugs he took. He claimed Fuller did nothing to prevent the sexual assault and watched it take place. Because Wyles claims to have been in a blacked-out state of rage and because of his drug use, there is not a definitive timeline of the events that took place between the alleged sexual assault and the slaying of the victims. The only other individuals who would have known the timeline of the events are dead.

While Wyles and Fuller were fighting over the BB gun in the living room, McCoy took it from them. Fuller then told Wyles they needed to talk, and they proceeded into the laundry room. McCoy did not hear anything that took place in the laundry room, but a short time later, Fuller came back into the living room with her throat slashed. She stated that Wyles had slit her throat. Wyles then came back into the living room where Drinkwater tried to get Wyles outside. Although Drinkwater initially managed to remove Wyles from the house, Wyles forced his way back in. Once inside, he resumed stabbing Fuller before turning his attack on Drinkwater. Fuller was stabbed a total of thirty-two times in various parts of her body, with wounds that caused her lung to collapse, leading to

her death. Drinkwater was stabbed twenty-eight times, with injuries that penetrated vital organs such as his heart and liver, causing his death as well.

Deputy Sheriff Robert McGhee responded to a 911 call at the scene. He found Fuller alive but severely injured and Wyles holding Drinkwater, who was also critically injured. Wyles initially complied with McGhee's orders but later rearmed himself with a knife before being subdued and arrested. At the scene, Wyles originally claimed that he was breaking up a murder-suicide. He changed his story later, however, and eventually claimed that his attack was provoked because Drinkwater had sexually assaulted him.

During the trial, DNA evidence from the two knives used in the murders, as well as eyewitness testimony from the victims' mother, Shirley McCoy, and testimony from Officer McGhee supported the prosecution's case. At the culmination of the trial, the jury was given an instruction on capital murder, first-degree murder, second-degree murder, and manslaughter. The jury considered and rejected Wyles's defense of extreme emotional disturbance, finding Wyles guilty of two counts of capital murder despite his claims of being in a "frenzied emotional state." He was sentenced to two consecutive sentences of life without parole plus 2 five-year sentences for the presence-of-a-child enhancements.

## II.    *Standard of Review*

A motion for a directed verdict is a challenge to the sufficiency of the evidence.[1] When considering a challenge to the sufficiency of the evidence, this court views the evidence in the light most favorable to the State and considers only the evidence that

---

[1] *See McClendon v. State*, 2019 Ark. 88, at 3, 570 S.W.3d 450, 452.

supports the verdict.[2] The court will affirm a conviction if there is substantial evidence to support it, meaning the evidence is of sufficient force and character that it will, with reasonable certainty, compel a conclusion without resorting to speculation or conjecture.[3] Substantial evidence can be direct or circumstantial.[4] Whether circumstantial evidence excludes every hypothesis consistent with innocence is for the jury to decide, not this court.[5] Likewise, the jury, rather than this court, is responsible for resolving questions concerning the credibility of witnesses.[6] In resolving conflicting testimony and inconsistent evidence, the jury is entitled to believe the State's account of the facts rather than the defendant's version.[7] With this in mind, we now turn to the capital-murder statute.

### III. *Discussion*

### A. Capital Murder

"A person commits capital murder if . . . [w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person[.]"[8] Premeditated and deliberate murder occurs when the killer's conscious object is to cause death, and he forms that intention before he acts.[9] Premeditation may be formed

---

[2] *See Wofford v. State*, 2023 Ark. 138, at 4, 675 S.W.3d 137, 139.

[3] *Id.*

[4] *McKenzie v. State*, 362 Ark. 257, 262, 208 S.W.3d 173, 175 (2005).

[5] *Cone v. State*, 2022 Ark. 201, at 7, 654 S.W.3d 648, 655.

[6] *Wofford*, 2023 Ark. 138, at 4, 675 S.W.3d at 139.

[7] *Id.*

[8] Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2017).

[9] *Fletcher v. State*, 2018 Ark. 261, at 5, 555 S.W.3d 858, 861.

in an instant and is rarely capable of proof by direct evidence but usually must be inferred from the circumstances of the crime.[10] An inference of premeditation and deliberation can be made from the circumstantial evidence of the crime, "such as the type and character of the weapon used; the nature, extent, and location of wounds inflicted; and the conduct of the accused."[11] Additionally, a presumption exists that persons intend the natural and probable consequences of their acts.[12] Given these standards, the circuit court's denial of Wyles's motion for directed verdict as to capital murder must be affirmed.

Wyles attempted to raise the defense of "frenzied emotional state" to support his claim that these killings were not premeditated or deliberate. The jury, responsible for resolving questions concerning his credibility, chose to accept the State's presentation of the case rather than Wyles's. We cannot second-guess the jury's assessments on appeal, and its decision not to accept Wyles's argument was within its properly informed discretion. Since the jury adequately heard and subsequently rejected this defense and its related jury instruction, what is left is for us to evaluate is whether substantial evidence supports Wyles's convictions. For the reasons explained below, we conclude that substantial evidence supports Wyles's convictions.

This court has held time and again that stabbing a victim over a dozen times and a prolonged struggle shows a purpose that rises to premeditation and deliberation.[13] Indeed,

---

[10] *Id.* at 5, 555 S.W.3d at 86–62.

[11] *Id.* at 5, 555 S.W.3d at 862.

[12] *See, e.g.*, *Davis v. State*, 2009 Ark. 478, at 11, 348 S.W.3d 553, 560.

[13] *See, e.g.*, *Cone*, 2022 Ark. 201, at 8–9; *see also Wofford*, 2023 Ark. 138, at 4, 675 S.W.3d at 139.

this court in *Cone v. State* held that the jury could infer premeditation and deliberation to support a capital-murder conviction from the nature and extent of the stab wounds *alone*.[14] This is especially true when the stab wounds are of a violent nature.[15] The facts and evidence here support the very same conclusion that the jury reached when it found that Wyles had slayed the victims with premeditation and deliberation.

*Wofford v. State* is particularly instructive here regarding the number of stab wounds, and the nature, extent and location of the wounds that constitute premeditation and deliberation to support a capital-murder conviction.[16] In *Wofford*, this court held that forty-five stab wounds directed at the victim's face, neck, chest, and hands was "compelling evidence of premeditation and deliberation."[17] The same is true here. Fuller was stabbed thirty-two times in various parts of her body; as a result of her wounds, her lung collapsed, leading to her death. Drinkwater was stabbed twenty-eight times, with injuries that penetrated vital organs such as his heart and liver, causing his death as well. As in *Wofford*, the number of stab wounds, and the nature, extent and location of the wounds are all compelling evidence of premeditation and deliberation.

Likewise, the evidence of a prolonged and lengthy struggle between Wyles and the victims supports the jury's conclusion that Wyles's killings were premeditated and deliberate. The following facts clearly show that a lengthy struggle took place. Wyles got into an

---

[14] *Cone*, 2022 Ark. 201, at 9, 654 S.W.3d at 656.

[15] *See Fletcher*, 2018 Ark. 261, at 5, 555 S.W.3d at 862.

[16] *Wofford*, 2023 Ark. 138, at 5, 675 S.W.3d at 140.

[17] *Id.*, 675 S.W.3d at 140.

argument with Fuller after he had shot her with a BB gun. He went into the laundry room with Fuller and then cut her throat with a knife. After slashing Fuller's throat, the two proceeded into the living room where Drinkwater then engaged Fuller in an attempt to get him outside. He got Wyles outside before Wyles ultimately forced his way back into the home. Once he was back inside, Wyles continued to stab Fuller to death before directing his attack on Drinkwater. Wyles then stabbed Drinkwater to death.

Given the overwhelming evidence presented by the State, the jury had sufficient evidence of Wyles's premeditation and deliberation to support its convictions of him for capital murder, and the circuit court properly denied Wyles's directed-verdict motion as to capital murder. Because the State presented sufficient evidence to support the capital-murder convictions, whether Wyles formed the culpable mental state of the lesser offense of first-degree murder is moot.

IV.    *Rule 4-3(a) Requirement*

Wyles received a sentence of life imprisonment, so the record has been reviewed for all errors prejudicial to him, as required by Arkansas Supreme Court Rule 4-3(a). No reversible error was found.

Affirmed.

*David R. Raupp*, Arkansas Public Defender Commission, for appellant.

*Tim Griffin*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.