SLIP OPINION

Cite as 2016 Ark. 305

# SUPREME COURT OF ARKANSAS

No. CR–15–997

| | |
|---|---|
| TONY LENZARO BROOKS<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered: September 15, 2016<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT [60CR-13-2659]<br><br>HONORABLE HERBERT THOMAS WRIGHT, JUDGE<br><br>AFFIRMED. |

**COURTNEY HUDSON GOODSON, Associate Justice**

A jury in the Pulaski County Circuit Court found appellant Tony Lenzaro Brooks guilty of capital murder and abuse of a corpse for which he received respective terms of life in prison without parole[1] and thirty years in prison. For reversal, Brooks contends that the circuit court erred by denying his motions for directed verdict on the charge of capital murder because the State failed to prove that he committed the murder or that he acted with premeditation and deliberation. We find no merit in these arguments and affirm.

Our review of the record reflects that at approximately 6:00 a.m. on June 27, 2013, Shannon Kemp saw smoke rising from the rear of a vacant storage building on Young Road as he was arriving for work at his nearby business. Upon inspection, he observed tires that were on fire and what he thought might be a body in the debris. Captain Stephen White of the Little Rock Fire Department confirmed that the fire did contain the body of a white

---

[1]The prosecution did not seek the death penalty for the offense of capital murder.

female.  The remains proved to be those of Amy Mae Hughett.  White testified that Hughett was lying on the ground with tires and plastic tubing on top of her.  The fire had consumed one tire.  The body and another tire were still smoldering, and Hughett was severely burned from the waist down.  White stated that he detected a petroleum-type scent at the fire, and he said that the use of an accelerant is necessary for tires to burn.  He could not say how long the fire had been burning, but he testified that such a fire could potentially burn for hours.  Debris from the fire and some of Hughett's clothing tested positive for gasoline.

Barbara Alexander, who is Brooks's mother, testified that in June 2013, Brooks lived either with her and her former boyfriend, Gary Saulsberry, in a home on Eagle Drive or with her mother in a house down the street.  During the early morning hours of June 27, 2013, Alexander received a phone call from Brooks wherein he asked her to pick him up at a location on Geyer Springs Road.  Testimony revealed that this area is in the vicinity of Young Road, where Hughett's body was found.  Alexander testified that after they returned home, Brooks left in a white Jeep Grand Cherokee that was registered in Saulsberry's name. She acknowledged that she had called the police to report Brooks's unauthorized use of the vehicle.  She also telephoned Brooks and told him that the police had been alerted. Alexander subsequently advised the police that, before he left in the Jeep, Brooks had threatened to kill her if she awakened Saulsberry.

Brooks's sister, Earlmesha Coleman, testified that Brooks appeared at her doorstep early that same morning and asked her to return the Jeep to their grandmother's home on Eagle Drive.  She agreed and drove the Jeep while her boyfriend, Timothy Clemmons, drove their children and Brooks in another vehicle.  Coleman testified that the Jeep smelled

CR–15–997

2

of fumes that gave her a headache. In his testimony, Clemmons stated that Brooks confessed to killing Hughett during the ride that morning to Eagle Drive. Coleman also testified that Brooks subsequently advised her not to testify by pleading "the Fifth" and told her that he would hurt her if she "ever got down wrong-talking."

Saulsberry consented to a search of the Jeep the day that Hughett's body was discovered. Detective Brad Silas testified that the windows of the vehicle were rolled down and that he detected the strong odor of either gas or some kind of cleaning chemical. Detective Jordan Neufer also testified that he noticed the odor of gasoline in the vehicle. Detective Matt Hoffine took part in the investigation, and he, too, smelled gasoline or a petroleum-based chemical emanating from the Jeep. Hoffine also observed brownish stains on the front passenger seat that appeared to be blood. Testing revealed that the stains were indeed blood and that the blood matched Hughett's DNA profile with all scientific certainty.

Dr. Charles Kokes performed Hughett's autopsy. He noted that there was extensive thermal damage to the lower half of her body. Even so, Hughett was intact internally, and Kokes was able to swab her vaginal area to determine the presence of foreign DNA. Kokes testified that Hughett had sustained a multitude of blunt-force injuries in the form of abrasions, contusions, and lacerations. Hughett had contusions over much of her forehead, her eyes, the left side of her face, and her shoulders. Linear abrasions were scattered over her face and shoulders. Hughett's upper right forehead bore a large laceration. Another large laceration was located in front of her right ear, and she had lacerations both over and under her right eye, as well as the inside surface area of that eye. There was a laceration above the bridge of her nose and scrapes on the nose and surfaces of her lips. The inner

linings of both lips were also lacerated and torn. Kokes testified that injuries to Hughett's face were caused by different applications of force.

Kokes found no external injuries to the back of her head. However, when he examined her head internally, he found a wide area of hemorrhage, or bruising, in the scalp on the right side that was caused by blunt-force trauma. Kokes testified that the blunt-force injuries to Hughett's body were caused by a physical object, and not a fist. He said that all of these injuries, because they were placed in different locations and involved multiple applications of force, indicated a prolonged and violent struggle. Kokes also noted the presence of defensive-type wounds on Hughett's arms and hands.

Kokes testified that he also found evidence of strangulation. He detected a number of linear injuries to the front and both sides of Hughett's neck. Internally, Kokes also observed multiple areas of hemorrhaging into the strap muscles of the neck. He determined that Hughett had sustained fractures of the hyoid bone and bilateral fractures of the thyroid cartilage. Kokes found petechial hemorrhaging in her eyes and evidence of bleeding into the musculature of the tongue. Kokes stated that each of these findings taken together indicated strangulation. He concluded that the cause of death was blunt-force trauma and strangulation.

Kokes further testified that a person can lose consciousness in as little as ten to fifteen seconds after force is applied to the neck. He said that it requires prolonged pressure on the neck for a period of time, usually several minutes, to cause sufficient oxygen deprivation to result in death by strangulation.

CR–15–997

SLIP OPINION

Josef Hof, a DNA examiner at the Arkansas State Crime Lab, testified that the vaginal swabs taken from Hughett contained a mixture of DNA from Hughett and a foreign individual. The DNA profile foreign to Hughett's matched Brooks's DNA with all scientific certainty.

In his testimony, Brooks stated that he had met Hughett several weeks before her death and that he had sexual relations with her on June 26, 2013, between the hours of 4:00 p.m. and 5:00 p.m. He said that the encounter took place at Saulsberry's home and that she left the house when it concluded. Brooks denied killing Hughett. He testified that he gave his brother a ride to his girlfriend's house that night and that he had picked up two men on Eagle Drive upon his return. Brooks stated that he turned on the interior light of the vehicle to complete a drug sale with the men and saw that Carter Miller, the one sitting in the front passenger seat, had blood all over his clothing. Brooks further testified that the vehicle smelled of gasoline when he entered it that morning.

For reversal, Brooks asserts that the circuit court erred in denying his motions for directed verdict on the charge of capital murder. He argues that the evidence does not show that he killed Hughett or that he did so with premeditation and deliberation. On appeal, we treat a motion for directed verdict as a challenge to the sufficiency of the evidence. *Starling v. State*, 2016 Ark. 20, 480 Ark. 158. In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Reynolds v. State*, 2016 Ark. 214, ___ S.W.3d ___. Substantial evidence is evidence that is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to

speculation or conjecture. *Sylvester v. State*, 2016 Ark. 136, 489 S.W.3d 146. In reviewing a sufficiency challenge, we view the evidence in the light most favorable to the State, considering only evidence that supports the verdict. *Mercouri v. State*, 2016 Ark. 37, 480 S.W.3d 864.

A person commits the offense of capital murder if "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person." Ark. Code Ann. § 5-10-101(a)(4) (Repl. 2013). Premeditated and deliberated murder occurs when the killer's conscious object is to cause death, and he forms that intention before he acts and as a result of a weighing of the consequences of his course of conduct. *Williams v. State*, 2011 Ark. 432, 385 S.W.3d 157. However, premeditation is not required to exist for a particular length of time. *Carmichael v. State*, 340 Ark. 598, 12 S.W.3d 225 (2000). It may be formed in an instant and is rarely capable of proof by direct evidence but must usually be inferred from the circumstances of the crime. *Pearcy v. State*, 2010 Ark. 454, 375 S.W.3d 622. A jury can infer premeditation and deliberation from circumstantial evidence, such as the type and character of the weapon used; the nature, extent, and location of wounds inflicted; and the conduct of the accused. *Green v. State*, 2013 Ark. 497, 430 S.W.3d 729. The longstanding rule in the use of circumstantial evidence is that, to be substantial, the evidence must exclude every other reasonable hypothesis than that of the guilt of the accused. *Gill v. State*, 2015 Ark. 421, 474 S.W.3d 77. Whether the evidence excludes every other reasonable hypothesis is left to the jury to decide. *Conte v. State*, 2015 Ark. 220, 463 S.W.3d 686. On review, this court's role is to determine whether the jury

resorted to speculation and conjecture in reaching its verdict. *Williams v. State*, 2015 Ark. 316, 468 S.W.3d 776.

We first address Brooks's contention that the State failed to offer sufficient proof that he killed Hughett. When the evidence is viewed in the light most favorable to the State, the testimony of Alexander placed Brooks in the area where Hughett's body was found. Her blood was found in the vehicle Brooks was driving that morning. This vehicle reeked of the odor of gasoline. The testimony showed that an accelerant is required to burn tires and that the debris from the fire and clothing of Hughett tested positive for gasoline. Brooks's DNA was found in Hughett's vagina, and it can be surmised that the lower half of her body was the target of the fire as an effort to destroy that evidence. According to the testimony of Clemmons, Brooks confessed to the murder. Although Brooks claimed innocence in his testimony, the jury was not required to believe him. This court has made it patently clear that the jury is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and a jury is not required to believe a defendant's self-serving testimony. *McKenzie v. State*, 362 Ark. 257, 208 S.W.3d 173 (2005). Substantial evidence supports the jury's decision that Brooks committed the murder.

We also hold that substantial evidence supports the jury's determination that Brooks acted with premeditation and deliberation. Hughett sustained numerous injuries to her face and head. According to the medical examiner, each injury was caused by a separate blow and that the sheer number and nature of the wounds indicated a prolonged and violent struggle. In addition to being savagely beaten, Hughett was also strangled, a process that

CR-15-997

requires several minutes to succeed in causing death.  The evidence amply demonstrates that Brooks had the conscious object to cause Hughett's death.

Because Brooks received a sentence of life in prison without the possibility of parole, the record has been reviewed for all errors prejudicial to Brooks, as required by Arkansas Supreme Court Rule 4–3(i).  No reversible error was found.

Affirmed.

*Laura Avery*, for appellant.

*Leslie Rutledge*, Att'y Gen., by:  *Ashley Argo Priest*, Ass't Att'y Gen., for appellee

CR–15–997