Cite as 2019 Ark. 383

# SUPREME COURT OF ARKANSAS

No. CR-19-420

| | |
|---|---|
| MARK EDWARD CHUMLEY<br><br>APPELLANT<br><br>V.<br><br>STATE OF ARKANSAS<br><br>APPELLEE | Opinion Delivered: December 12, 2019<br><br>APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT<br>[NO. 72CR-15-2035]<br><br>HONORABLE JOANNA TAYLOR, JUDGE<br><br>AFFIRMED. |

**RHONDA K. WOOD, Associate Justice**

A jury convicted Mark Chumley of capital murder and sentenced him to life imprisonment. Chumley's single argument on appeal is that the circuit court should have granted his directed-verdict motion because there was insufficient evidence that he was guilty of either capital or first-degree murder as felony murder during a rape or an attempted rape or intentional murder. We affirm.

## I. *Background*

Chumley lived in Fayetteville with his girlfriend, Rebecca Lloyd, and her three children. John (Chris) and Tori Davis also resided with them. Allegations of sexual abuse and environmental neglect had been lodged against Rebecca. Investigators inquired into the allegations, which upset Chumley, who believed someone was trying to set him up for the sexual abuse of Rebecca's daughter. Chumley blamed Tori for the investigation.

Chumley told Chris that Tori was cheating on him. Both men began hitting her with baseball bats. Later, Chumley called Christopher and Desire Treat to come over to the

house. Christopher and Desire had a history of animosity toward Tori. When Christopher and Desire arrived, Chumley encouraged them also to strike Tori with baseball bats. While the four took turns beating Tori, Chumley repeatedly asked her about calling the Arkansas Department of Human Services (DHS). Chumley also questioned Tori about what she knew of his own daughter's rape. When Tori hesitated, Chumley would strike her across the knees with a bat. Anytime Chris or Christopher hesitated in striking Tori, Chumley would remind them of the things she had done to them.

At some point, Tori fell off the porch. She was then dragged into the driveway, causing her pants to come off. Chumley instructed the others to retrieve a battery charger, and he attached the jumper cable clips to Tori's nipples. He then shocked her for several minutes. Chumley also told the others to shove a baseball bat inside her vagina. When Desire told Chumley that it "wasn't going to work," Chumley told Chris to retrieve some chainsaw oil from the house to use as a lubricant. He told Desire to pour the oil inside her and try to insert the bat again. Desire and Chumley again tried to insert the bat into Tori's vagina while the others held her down and kept her legs open.

The group then carried Tori to another house on the property. Once inside, Chumley injected Tori with a white substance he took from a Mountain Dew bottle before leaving. Tori died from her injuries. Chumley then directed Chris and Christopher to burn the evidence. The following day, Chumley called 911. During the call, Chris got on the phone and told the operator that he had killed Tori because she was threatening to divorce him. Police who arrived on the scene thought Chumley was acting erratically and trying to prevent them from talking to his accomplices separately.

The State pursued charges against Chumley, Chris, Christopher, and Desire. Chumley's accomplices all pleaded guilty and received term-of-years sentences and testified at Chumley's trial. The court instructed the jury under two types of capital murder and first-degree murder—felony murder with the underlying felony of rape or attempted rape and intentional murder. The jury convicted Chumley of capital murder and sentenced him to life imprisonment without parole.

## II. *Sufficiency of the Evidence*

Chumley argues that the circuit court should have granted his directed-verdict motion on the capital- and first-degree murder charges. He asserts that the State presented insufficient evidence that he committed felony murder during a rape or an attempted rape or intentional murder.

We evaluate the denial of a directed-verdict motion as a challenge to the sufficiency of the evidence. *Taylor v. State*, 2010 Ark. 372, at 11, 372 S.W.3d 769, 776. In reviewing a challenge to the sufficiency of the evidence, we determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* We view the evidence in the light most favorable to the verdict, and only evidence supporting the verdict will be considered. *Id.*

When accomplice testimony is considered in reaching a verdict, Arkansas law provides that a person cannot be convicted based upon the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant . . . with the commission of the offense." Ark. Code Ann. § 16-89-111(e)(1)(A) (Supp. 2017).

3

Additionally, "corroboration is not sufficient if it merely shows that the offense was committed and the circumstances thereof." Ark. Code Ann. § 16-89-111(e)(1)(B).

Chumley argues that there was insufficient evidence for a capital-murder conviction because he or his accomplices did not kill Tori in the course and furtherance of an attempted rape and that he did not commit premeditated and deliberated murder. The State submitted both theories to the jury. Because the State submitted the capital-murder charge to the jury as a general verdict, the jury did not specify whether its findings were based on felony murder, premeditated and deliberated capital murder, or both. We may affirm a general verdict of capital murder if there was sufficient evidence to convict on either ground. *See Taylor*, 2010 Ark. 372, at 15, 372 S.W.3d at 778.

Sufficient evidence supports the jury's verdict on premeditated and deliberated murder. A person commits capital murder if "with the premeditated and deliberated purpose of causing death of another person, the person causes the death of any person." Ark. Code Ann. § 5-10-101(a)(4) (Supp. 2017). Premeditated and deliberated purpose occurs when it is a person's conscious object to cause death, having formed an intention to do so before acting and as a result of weighing the consequences of this course of conduct. *Fletcher v. State*, 2018 Ark. 261, 555 S.W.3d 858. Premeditation does not have to exist for any particular length of time and may be formed in an instant. *Id.* Premeditation can be inferred from circumstantial evidence including the type and character of the weapon used; the nature, extent, and location of the wounds inflicted; and the conduct of the accused. *Id.*

Although some of the evidence proving premeditation and deliberation was provided by Chumley's accomplices, that testimony was corroborated by Chumley's statement to

4

police, forensic evidence, and testimony from other witnesses. Chumley primarily argues that the evidence did not show he intended to kill Tori. Rather, the evidence indicated that he intended only to severely beat her. We disagree. A jury may infer premeditation and deliberation from the number and nature of injuries to the victim and the time needed to inflict them. *See Brooks v. State*, 2016 Ark. 305, at 7–8, 498 S.W.3d 292, 297 (finding that a prolonged and violent beating culminating in the victim's strangulation sufficiently evidenced premeditation and deliberation); *Chase v. State*, 334 Ark. 274, 278, 973 S.W.2d 791, 792–93 (1998) (concluding that the type, number, and distribution of stabbing and beating death was sufficient for jury to conclude premeditation and deliberation); *Carmichael v. State*, 340 Ark. 598, 602–03, 12 S.W.3d 225, 228 (2000) (concluding that medical examiner's testimony that it took one to five minutes to strangle the victim after she was beaten and sodomized was sufficient evidence to prove premeditation and deliberation).

Here, the evidence exhibited that Chumley deliberately assisted in, and likely orchestrated, the beating, rape, and torture of Tori that lasted for hours and occurred in three different locations. Chumley's accomplices testified that during the beating Chumley repeatedly questioned Tori about the rape of his daughter and the abuse of Rebecca's children. Chumley had motive to kill Tori because he believed that she knew about his daughter's rape but failed to stop it and that she had initiated DHS investigations into Rebecca's children. Chumley substantiated his motive for killing Tori in his police interview. He admitted to hitting Tori with a bat because she knew his daughter had been raped in the small house on the property but failed to report it to police. He also thought

5

that Tori and Chris were trying to set him up for the sexual abuse of Rebecca's daughter. Chumley told police that after they left Tori in the house, they burned the evidence.

Forensic evidence also corroborates much of the accomplices' testimony. Police found a burn pile and two charred baseball bats, a backpack containing ingredients used to make methamphetamine, and a Mountain Dew bottle along some railroad tracks. Police located a third bat in a mobile home on the property. Additionally, the medical examiner testified that Tori died from internal blood loss caused by multiple blunt force injuries. He estimated that she had been struck more than twenty times with several different long objects. He also observed electrical burn marks on Tori's nipples, which were created while Tori was alive. The medical examiner found oil on her inner thighs and in her vagina, which the state crime laboratory determined was consistent with chainsaw oil. Considering all this evidence, the State presented sufficient proof that Chumley caused the death of Tori with premeditation and deliberation.

Therefore, the circuit court did not err in denying Chumley's directed-verdict motion on the intentional capital-murder charge. As the evidence is sufficient to uphold the jury's capital-murder conviction, we need not discuss Chumley's argument that there was insufficient evidence to establish he committed the lesser-included offense of first-degree murder.

### III. *Rule 4-3(i)*

In compliance with Arkansas Supreme Court Rule 4-3(i), the record has been examined for all objections, motions, and requests made by either party that were decided adversely to appellant. No adverse ruling involved prejudicial error.

Affirmed.

*David R. Raupp*, Arkansas Public Defender Commission, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Chris R. Warthen*, Ass't Att'y Gen., for appellee.