Cite as 2025 Ark. 26

# SUPREME COURT OF ARKANSAS
**No.** CR-24-216

| | | |
|---|---|---|
| | | **Opinion Delivered:** April 3, 2025 |
| BRYANT SMITH | | |
| | APPELLANT | |
| V. | | APPEAL FROM THE JEFFERSON COUNTY CIRCUIT COURT [NO. 35CR-20-558] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE ALEX GUYNN, JUDGE |
| | | |
| | | <u>AFFIRMED</u>. |

**COURTNEY RAE HUDSON, Associate Justice**

Appellant Bryant Smith appeals his convictions in the Jefferson County Circuit Court for two counts of capital murder, one count of attempted capital murder, five counts of first-degree unlawful discharge of a firearm from a vehicle, one count of second-degree unlawful discharge of a firearm from a vehicle, six counts of terroristic act, and one count of unauthorized use of property to facilitate a crime. He received an aggregate sentence of life imprisonment without the possibility of parole. For reversal, Smith argues that (1) the circuit court abused its discretion by admitting evidence that Smith possessed a firearm when he was arrested; (2) the circuit court improperly commented on the evidence by reminding a witness that she was under oath; (3) the circuit court erred by not sua sponte striking a witness's testimony; (4) the circuit court erred by ruling that life sentences were mandatory on the noncapital Class Y felonies based on Smith's criminal history; (5) the circuit court

erred by giving a nonmodel jury instruction that evidence of Smith's flight from the scene could be considered as evidence of his guilt; (6) the evidence supporting each of his convictions was legally insufficient; and (7) remand is necessary to correct Smith's sentencing order. We affirm.

On September 24, 2020, Smith was charged with two counts of capital murder, one count of attempted capital murder, five counts of first-degree unlawful discharge of a firearm from a vehicle, one count of second-degree unlawful discharge of a firearm from a vehicle, six counts of terroristic act, and one count of unauthorized use of property to facilitate a crime in connection with the deaths of seventeen-year-old Minor Child 1 (MC1) and twenty-year-old Kavon Mitchell and the injury of Cedric LaPoole on September 3, 2020.[1] The criminal information also alleged that Smith was a habitual offender and that he was subject to sentence enhancements for using a firearm during the commission of the offenses and for committing a criminal act of violence in concert with two or more persons. The criminal information was later amended to add Hekeryin Cain and Minor Child 2 (MC2) as co-defendants, to add "or an accomplice" to each of the counts, and to charge Smith as a habitual offender with two prior serious violent felonies rather than four prior felony convictions.

Smith's jury trial was held on August 21–23, 2023, and the State presented the following evidence in support of the charges. Guy Taylor testified that he was driving on East Harding Avenue toward Poplar Street in Pine Bluff on the afternoon of September 3,

---

[1]Smith was also charged with being a felon in possession of a firearm, but this charge was severed prior to trial and later nolle prossed by the State. An additional count of unauthorized use of property to facilitate a crime was also nolle prossed.

2020, when he heard a popping noise. He looked to his left and saw that shots were being fired from a Chevrolet Malibu. Taylor testified that two or three of the Malibu's occupants were shooting, including a "skinny black male" who was sitting on the front-passenger window and firing over the roof of the car. He stated that there might have been a second vehicle involved as well. He saw the body of a male lying on the ground in front of the house and called 911 to report the murder.

Kimberly Phillips, a crime-scene technician with the Pine Bluff Police Department, testified that she responded to 1704 South Elm Street on the afternoon of September 3, 2020. She found a deceased male, MC1, in front of the home and multiple shell casings in the road. Phillips indicated that a second victim, Cedric LaPoole, had already been taken to the hospital with injuries. She collected twenty-eight spent shell casings from the scene, all from a 9mm handgun with the exception of two that were from a 7.62x39mm rifle. Phillips stated that she found two additional 9mm shell casings during a subsequent search of a Chevrolet Malibu.

Officer Deondre Goodwin testified that he responded to the scene of the second drive-by shooting, which occurred the same afternoon, at 25 Needles Drive. He found victim Kavon Mitchell, who later died from his injuries, lying in the front yard. The State introduced a neighbor's surveillance video from across the street that captured the incident and that showed a dark-blue Chevrolet Impala and a light-blue or green Chevrolet Malibu driving by at the same time Mitchell was shot. The video also showed the Impala colliding with the rear of the Malibu during the shooting.

Sergeant Bill Wiegand testified that he collected twenty-four spent shell casings, which included both 9mm and 7.62x39mm rounds, from the street in front of 25 Needles Drive. He also found pieces of a vehicle's taillight scattered among the shell casings. He discovered multiple bullet holes in the residence and in the vehicles parked in front, and a neighbor's residence and vehicle had also been struck by bullets. Wiegand later searched the Impala that was involved in the shooting and discovered four more 9mm shell casings and additional pieces of a taillight that matched those found at the scene at 25 Needles Drive. Pictures were introduced demonstrating that these taillight pieces appeared to fit the broken taillight on the Malibu. Wiegand testified that he also found an identification card belonging to Smith's girlfriend, Asia Holman, inside the Impala.

Dr. Adam Craig, the medical examiner, testified that MC1 died from a gunshot wound to the back of his head. Dr. Craig stated that the second murder victim, Mitchell, also died as a result of gunshot wounds—one to the back of his head or upper neck and one to the lower left side of his back. In addition, a third bullet grazed the top of Mitchell's left foot.

Chloe Cantrell, the firearm and tool mark examiner, concluded from her analysis of the bullet casings recovered from the two crime scenes that five different guns had been used. She testified that the 7.62x39mm casings found at each scene were fired from one rifle, most likely an AK-47. The remainder of the casings, which were 9mm in caliber, were fired from four separate pistols. None of these bullet casings matched the gun that was found in Smith's possession when he was arrested.

Asia Holman testified that she let Smith borrow her blue Chevy Impala on the afternoon of September 3, 2020. When he returned an hour or so later, he informed Holman that another vehicle had hit the side of her car but that he would repair the damage. Holman stated that the front bumper and headlight on the driver's side of her car were damaged. The next day, the police came to her home and told her that her vehicle had been involved in a crime. Holman testified that after they left, she looked for Smith and discovered that he had fallen through her bathroom ceiling after hiding in the attic. Smith told her that he was scared "they trying to pin this on me." She admitted that she initially told the police that she had loaned her car to Hekeryin Cain because she was trying to protect Smith. According to Holman, Smith owned a rifle that he had kept in a closet in her house, but it was no longer there after September 3, 2020. She testified that Smith also left town a couple of days after the shootings.

Detective Jason Boykin with the Pine Bluff Police Department testified that the United States Marshals Service located Smith in Parsons, Kansas, on September 25, 2020, and transported him back to Pine Bluff. In a recorded statement that was played for the jury, Smith stated that the September 3 shootings in this case were in retaliation for another shooting earlier in the day that killed the grandfather of some of Smith's accomplices. Smith admitted that he was driving the blue Chevy Impala during the shootings, but he denied firing a gun. He also denied being in possession of an AK–47 or other rifle, stating that the only firearm he owned was a .45 Taurus, which he had with him when the crimes were committed and when he was arrested. According to Smith, there were two passengers in his car who shot at the victims, and there were also four occupants of the Chevy Malibu

5

who participated in the shootings. He indicated that one of the passengers in the Malibu did have a rifle, but the remainder of the firearms used that day were handguns.

The jury found Smith guilty of all charges. He waived jury sentencing, and the circuit court sentenced him to life without parole for the two capital-murder convictions; life imprisonment for the attempted capital murder, five counts of Class Y terroristic act, and five counts of first-degree discharge of a firearm from a vehicle; and forty years' imprisonment for each of the remaining convictions for Class B terroristic act, second-degree discharge of a firearm from a vehicle, and unauthorized use of property to facilitate a crime, to be served concurrently with the life sentences. With the agreement of the State, the circuit court did not impose any sentencing enhancements for the use of a firearm during the commission of the offenses. The sentencing order was entered on September 5, 2023, and Smith filed a timely notice of appeal.

I. *Whether Sufficient Evidence Supports the Convictions*

We first address Smith's argument on appeal that the evidence supporting each of his convictions was legally insufficient.[2] A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Bush v. State*, 2024 Ark. 77, 687 S.W.3d 570. On appeal, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Brooks v. State*, 2016 Ark. 305, 498 S.W.3d 292. Substantial evidence is evidence of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id.* In determining whether there is

---

[2]Although Smith lists this argument as his sixth point on appeal, we address the sufficiency of the evidence first due to double-jeopardy concerns. *E.g.*, *Taffner v. State*, 2018 Ark. 99, 541 S.W.3d 430.

substantial evidence to support the verdict, this court reviews the evidence in the light most favorable to the State and considers only that evidence which supports the verdict. *Bush, supra*. Circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *Armstrong v. State*, 2020 Ark. 309, 607 S.W.3d 491. Whether the evidence excludes every other hypothesis is left to the jury to decide. *Id.* The credibility of witnesses is an issue for the jury, not the court; the trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *Smith v. State*, 2024 Ark. 1, 680 S.W.3d 711.

As charged in this case, a person commits capital murder if "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of another person[.]" Ark. Code Ann. § 5-10-101(a)(4) (Repl. 2024). A person commits attempted capital murder if he or she purposely engages in conduct that constitutes a substantial step in a course of conduct intended to culminate in the commission of that offense. Ark. Code Ann. § 5-3-201(a)(2) (Repl. 2024). For a terroristic-act charge, the State must show that a person, while not in the commission of a lawful act, shot at an occupiable structure with the purpose to cause injury to a person or damage to property. Ark. Code Ann. § 5-13-310(a)(2) (Repl. 2024). To commit first-degree unlawful discharge of a firearm from a vehicle, a person must have knowingly discharged a firearm from a vehicle, and by that discharge, caused death or serious physical to another person. Ark. Code Ann. § 5-74-107(a)(1) (Repl. 2024). Second-degree unlawful discharge of a firearm from a vehicle requires that a person recklessly discharge a firearm in a manner that creates a substantial risk

7

of physical injury to another person or property damage to a home, residence, or occupiable structure. Ark. Code Ann. § 5-74-107(b)(1). Finally, "[a] person commits the offense of unauthorized use of another person's property to facilitate a crime if he or she knowingly uses the property of another person to facilitate in any way the violation of a predicate criminal offense without the owner's knowledge." Ark. Code Ann. § 5-74-105(a)(1) (Repl. 2024).

The criminal information alleged that Smith, or an accomplice, committed each of the charged offenses. A person is an accomplice of another person in the commission of an offense if, with the purpose of promoting or facilitating the commission of an offense, the person "solicits, advises, encourages, or coerces the other person to commit the offense" or "aids, agrees to aid, or attempts to aid the other person in planning or committing the offense[.]" Ark. Code Ann. § 5-2-403(a)(1), (2) (Repl. 2024). There is no distinction between the criminal liability of an accomplice and the person who actually commits the offense. *Bradley v. State*, 2013 Ark. 58, 426 S.W.3d 363. Thus, "a defendant may properly be found guilty not only of his own conduct, but also that conduct of his accomplice; when two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of both." *Id.* at 4–5, 426 S.W.3d at 366–67 (quoting *Clark v. State*, 358 Ark. 469, 476, 192 S.W.3d 248, 253 (2004)). Relevant factors to consider in determining whether the accused is an accomplice to a crime are the presence of the accused in the proximity of the crime, the opportunity to commit the crime, and an association with the person involved in the crime in a manner suggestive of joint participation. *Conway v. State*, 2016 Ark. 7, 479 S.W.3d 1.

Smith contends that the evidence was legally insufficient for each of his convictions because nothing connected him to the crimes. This is incorrect. In his statement to the police, Smith confessed to driving one of the two vehicles involved in the crimes while the passengers in his car fired their weapons at the victims. He also admitted that these shootings were committed in retaliation for another murder earlier that same day. While the State did not demonstrate that he fired a gun during the incidents, Smith aided the shooters and facilitated the commission of the crimes by driving the vehicle. Ark. Code Ann. § 5-2-403(a). Thus, he was liable for all of the conduct of his accomplices. *See, e.g.*, *Finley v. State*, 2019 Ark. 336, 587 S.W.3d 223 (holding that it was not necessary to show that the defendant was the shooter if she acted as an accomplice to the felony murder).

Smith argues that there was no forensic evidence tying him to the shootings, such as fingerprints or DNA, or any videos that show him driving the Impala; however, he did not make these arguments in his directed-verdict motions below, and they are not preserved for appeal. *E.g.*, *Break v. State*, 2022 Ark. 219, 655 S.W.3d 303. Smith also claims—and discusses further in his third and fourth points on appeal—that Holman's testimony should have been struck based on her lack of credibility and that there was therefore no evidence to corroborate his statement that he was the driver of the Impala. It is true that a confession of a defendant, unless made in open court, will not warrant a conviction unless (1) accompanied by other proof that the offense was committed or (2) supported by substantial independent evidence that would tend to establish the trustworthiness of the confession. Ark. Code Ann. § 16-89-111(d) (Supp. 2023). In reviewing the sufficiency of the evidence,

9

however, we consider all the evidence that supports the verdict, whether it is properly admitted or not. *Wallace v. State*, 2023 Ark. 7, 659 S.W.3d 267.

To the extent that Smith is arguing that his confession was insufficiently corroborated even if we consider all of the supporting evidence admitted in this case, including Holman's testimony, we disagree. Holman testified that she loaned her blue Chevy Impala to Smith on the afternoon of September 3, 2020, that he was gone for approximately one hour, and that the front bumper and headlight were damaged when he returned. The video surveillance from the scene of the shooting on Needles Drive that afternoon shows that multiple shots were fired from a blue Impala and a light-green or blue Malibu, and it also shows the Impala crashing into the rear of the Malibu. After the Impala was seized from Holman's residence and searched, the police found bullet casings and pieces of the broken headlight matching those collected from the scene of the shootings. We conclude that this additional evidence was sufficient to corroborate Smith's confession. Furthermore, Holman's credibility and any inconsistencies in her testimony were matters for the jury to resolve. *Smith*, *supra*. Because substantial evidence supports Smith's convictions, we affirm on this point.

II. *Whether Evidence That Smith Possessed a Firearm upon His Arrest Was Properly Admitted*

Smith next argues that the circuit court abused its discretion by admitting evidence that he possessed a firearm when he was arrested in Kansas. Prior to trial, Smith requested that the court exclude this evidence, claiming that it was irrelevant because the gun was not shown to be connected to this case. Smith also contended that it was overly prejudicial because his possession of a gun could be construed as a prior bad act. The circuit court

10

initially ruled that this evidence would be excluded. However, the next day, the State asked the court to reconsider, arguing that Smith had repeatedly mentioned the gun during his statement to police, that all of these instances would have to be redacted, and that the entirety of Smith's statement was relevant to show that he was being truthful in his confession. In addition, the State asserted this evidence was admissible under the res gestae exception. The State further claimed that Smith's possession of the gun would not be considered a prior bad act because the jury would not be told that he was a felon. After the circuit court listened to Smith's police interview in chambers, it ruled that his statements about the firearm were relevant and not overly prejudicial and that these portions of the interview did not need to be redacted.

As a general rule, all relevant evidence is admissible. Ark. R. Evid. 402. Relevant evidence is evidence that has a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." Ark. R. Evid. 401. But even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Ark. R. Evid. 403. Pursuant to Ark. R. Evid. 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The first sentence of Rule 404(b) sets out the general rule excluding evidence of a defendant's prior bad acts, while the second sentence provides an exemplary, but not exhaustive, list of exceptions to that rule. *Rickert v. State*, 2023 Ark. 191. A circuit court has

11

broad discretion in deciding evidentiary issues, and we will not reverse that decision absent an abuse of discretion. *Tucker v. State*, 2023 Ark. 69, 664 S.W.3d 428. Abuse of discretion is a high threshold that does not simply require error in the circuit court's decision but requires that the circuit court act improvidently, thoughtlessly, or without due consideration. *Bush*, *supra*.

Smith claims that his statements that he had a gun with him when he was arrested were irrelevant and prejudicial because they permitted the State to portray him as a "violent gun toting person" who also must have been handling firearms on the day of the shootings. The circuit court did not abuse its discretion by admitting this evidence. We have held that under the doctrine of res gestae, the State can introduce evidence showing all of the circumstances surrounding the charged act, as this provides context to the crime and places the jury in possession of the entire transaction. *Adams v. State*, 2021 Ark. 34, 617 S.W.3d 249. It is well settled that the acts, conduct, and declarations of the accused, before and after the crime, may furnish necessary corroboration; for example, flight following the commission of an offense is a factor that may be considered with other evidence in determining guilt. *Id.*

Here, the evidence that Smith possessed a firearm when he was arrested in Kansas not only showed all the circumstances surrounding his flight from the scene of the crimes but was also relevant because Smith stated that he had that same gun with him when the crimes were committed. Furthermore, the circuit court clearly concluded after listening to the interrogation that Smith's statements about the gun were inextricably intertwined with the remainder of his confession. Res gestae evidence is presumptively admissible. *Adams*,

*supra*; *Reid v. State*, 2019 Ark. 363, 588 S.W.3d 725. Further, while evidence offered by the State is often likely to be prejudicial, it should not be excluded unless the accused can show that it lacks probative value in view of the risk of unfair prejudice. *Lane v. State*, 2019 Ark. 5, 564 S.W.3d 524. Evidence of Smith's firearm was not unfairly prejudicial in this case. The jury was informed that the gun was not connected to the homicides, and the jury was also unaware that Smith could not legally possess a firearm as a felon. Finally, this evidence was cumulative to other evidence that was admitted without objection, such as Smith's admission that he carried a weapon during the shootings and Holman's testimony that he owned a rifle. *See, e.g.*, *Lard v. State*, 2014 Ark. 1, 431 S.W.3d 249 (stating that prejudice cannot be demonstrated where erroneously admitted evidence is merely cumulative to other evidence that is properly admitted). We therefore affirm the circuit court's admission of this evidence.

III. *Whether the Circuit Court's Admonishment of Holman Was Proper*

In his third point on appeal, Smith argues that the circuit court improperly commented on the evidence by reminding Holman that she was under oath. During Holman's direct examination, she testified that she loaned her car to Smith on the afternoon of September 3, 2020. The prosecutor then asked Holman whether she recalled telling the police in her earlier sworn statement that it was Cain who had borrowed the car, and Holman indicated that she may have been intoxicated when she made her earlier statement and that she did not really remember what she had said at that time. Smith objected to additional testimony from Holman wherein she attributed certain statements to Smith after he hid in her attic and then fell through her bathroom ceiling when the police came to talk

13

to her the day after the murders. He argued that those statements had not been provided to the defense. He later withdrew that objection but requested that the prosecutor ask leading questions of Holman so that she did not cause a mistrial by saying something unexpected. The prosecutor responded that she did not want Holman to commit perjury and that Holman kept "going back and forth between she does and doesn't remember." The circuit court stated, "It's called lying. . . . She's lying."

Out of the presence of the jury, the court cautioned Holman that she was under oath and needed to tell the truth. The prosecutor stated that she had also warned Holman and had advised her that she could defend herself against a perjury claim by voluntarily retracting any prior statements that were not true. Smith then stated, "I think I'm about to ask for a mistrial" because "the prosecutor is now acting as her attorney." The circuit court disagreed, stating that the prosecutor was just advising Holman what could happen if she did not testify truthfully and that the parties did not yet know what else Holman might say in her testimony. Smith responded, "Well, I guess we'll wait and hear and make it at that time, because I don't know exactly what we're going to say." The parties then continued with the direct and cross-examination of Holman.

Smith now contends that the circuit court's admonition to Holman that she was under oath and that she needed to tell the truth to avoid committing perjury was "an unauthorized comment on the evidence in violation of Ark. Const. art. 7, Section 23." The State responds that this argument was not raised below and is not preserved for appeal. We agree. At no time during the circuit court's discussion with Holman did Smith object to the court's cautioning her to testify truthfully. Thus, we do not address the merits of this issue.

14

*E.g.*, *Schnarr v. State*, 2017 Ark. 10 (stating that to preserve a point for appeal, a defendant must object at the first opportunity); *see also Green v. State*, 330 Ark. 458, 956 S.W.2d 849 (1997) (holding that defendant's argument that the circuit court's admonition to a witness in the jury's presence violated Ark. Const. art. 7, § 23 was barred because it was not raised below).

IV. *Whether the Circuit Court Should Have Struck Holman's Testimony*

In a related argument, Smith contends that the circuit court also erred by not sua sponte striking Holman's testimony. Smith argues that because the circuit court stated its belief in its bench conference with counsel that Holman was not telling the truth when she testified inconsistently with her prior sworn statement, the court had a duty to intervene and strike the testimony, even in the absence of his objection. He claims that the circuit court's failure to do so affected his substantial rights. Smith cites *Wicks v. State*, 270 Ark. 781, 606 S.W.2d 366 (1980), in support of his argument.

In *Wicks*, we recognized four narrow exceptions to the contemporaneous-objection rule: (1) a circuit court, in a death-penalty case, fails to bring to the jury's attention a matter essential to its consideration of the death penalty itself; (2) a circuit court errs at a time when defense counsel has no knowledge of the error and thus no opportunity to object; (3) a circuit court should intervene on its own motion to correct a serious error; and (4) the admission or exclusion of evidence affects a defendant's substantial rights. *White v. State*, 2012 Ark. 221, 408 S.W.3d 720. The third exception is limited to only those errors affecting the very structure of the criminal trial, such as the fundamental right to a trial by jury, the

presumption of innocence, and the State's burden of proof. *Lard, supra*. We have also stated that this exception is a mere possibility, for it has not yet occurred in any case. *Id*.

The circuit court's recognition that Holman's testimony contradicted her prior statement is not the sort of structural error that would fall within the third *Wicks* exception. Nor does Smith explain how the circuit court's failure to strike Holman's testimony implicated his substantial rights as provided in the fourth *Wicks* exception. Holman was admonished to tell the truth by both the circuit court and the prosecutor, and Smith had the opportunity to thoroughly cross-examine her regarding any inconsistencies in her testimony at trial and her prior statements. Thus, there is no merit to Smith's argument on this point. To the extent that Smith is challenging the sufficiency of the evidence based on Holman's alleged lack of credibility, we have already addressed this issue under his first point on appeal.

V. *Whether the Circuit Court Erred by Ruling That Smith Was Subject to Mandatory Life Sentences on the Noncapital Class Y Felonies*

Smith next argues that the circuit court erred by ruling that his criminal history mandated life sentences on the noncapital Class Y felony convictions. The State charged Smith as a habitual offender with two prior violent felonies—residential burglary and aggravated robbery—and asserted that he was required to serve a life sentence on all eleven noncapital Class Y felonies pursuant to Ark. Code Ann. § 5-4-501(d) (Supp. 2019). Smith claimed, however, that because he was convicted of residential burglary in 2006, which was before this offense was classified as a felony involving violence in 2015, this conviction should not be counted for purposes of section 5-4-501(d). He therefore contended that he

had only one prior violent felony conviction and that he should instead be sentenced under section 5-4-501(b) and (c), with sentencing ranges of forty to eighty years or life for the terroristic-act convictions and ten years to life for the unlawful-discharge convictions. The circuit court disagreed, ruling that Smith's 2006 residential-burglary conviction counted as a prior violent felony and that he was subject to mandatory life sentences.

Sentencing is entirely a matter of statute in Arkansas. *Willingham v. State*, 2021 Ark. 177, 631 S.W.3d 558. We have consistently held that sentencing shall not be other than in accordance with the statute in effect at the time of the commission of the crime. *Walden v. State*, 2014 Ark. 193, 433 S.W.3d 864. We review issues of statutory interpretation de novo, as it is for this court to determine the meaning of a statute. *Rodgers v. Ark. Parole Bd.*, 2024 Ark. 176, 700 S.W.3d 876. The primary rule of statutory construction is to give effect to the intent of the legislature. *Id.* We first construe the statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Ark. Parole Bd. v. Johnson*, 2022 Ark. 209, 654 S.W.3d 820. When the statute is clear, legislative intent is gathered from the plain meaning of the language used, and our analysis need go no further. *Rodgers*, *supra*.

The version of section 5-4-501(d) in effect at the time of the charged offenses in this case provides in pertinent part as follows:

> (d)(1) A defendant who is convicted of a felony involving violence enumerated in subdivision (d)(2) of this section and who previously has been convicted of two (2) or more of the felonies involving violence enumerated in subdivision (d)(2) of this section may be sentenced to pay any fine authorized by law for the felony involving violence conviction and shall be sentenced to an extended term of imprisonment without eligibility for parole or community correction transfer except under § 16-93-615 as follows:
>
> (A) For a conviction of a Class Y felony, a term of imprisonment of not less than life in prison;

. . .

(2) As used in this subsection, "felony involving violence" means:

(A) Any of the following felonies:

. . .

(iv) Aggravated robbery, § 5-12-103;

. . .

(xi) Residential burglary, § 5-39-201(a)[.]

Residential burglary was added to the list of felonies involving violence in section 5-4-501(d)(2) in 2015. Act 895 of 2015, § 3. While the statute was again amended in 2023 to remove this offense from the list of violent felonies, this recent amendment applies only to offenses committed on or after January 1, 2024. Act 659 of 2023, §§ 17–18. Accordingly, on September 3, 2020, when the crimes here occurred, residential burglary was considered a prior violent felony pursuant to section 5-4-501(d).

There is no merit to Smith's contention that his 2006 residential-burglary conviction should not be counted as a felony involving violence under the habitual-offender statute because it was prior to the 2015 amendment. Section 5-4-501(d) expressly applies to a defendant "who *previously* has been convicted of two (2) or more of the felonies involving violence enumerated in subdivision (d)(2)." Ark. Code Ann. § 5-4-501(d)(1) (emphasis added). This subdivision contains no language limiting the prior violent felonies to only those that are committed after the statute's effective date, and we will not read into a statute language that was not included by the legislature. *Rodgers*, *supra*. While Smith argues that his residential-burglary conviction would not be considered a prior violent offense under Ark. Code Ann. § 16-93-609 (Supp. 2023), this is an entirely separate statute that governs parole eligibility and is not determinative of the question raised here, which is the correct

sentencing range to be applied to a habitual offender under section 5-4-501(d).[3] Thus, the circuit court correctly sentenced Smith to mandatory life sentences on his noncapital Class Y felonies in accordance with section 5-4-501(d).

VI. *Whether the Circuit Court Erred by Giving a Nonmodel Jury Instruction*

In his sixth point on appeal, Smith argues that the circuit court erred by giving a nonmodel jury instruction that evidence of his flight from the scene could be considered as evidence of guilt. The State requested the instruction, arguing that it was a correct statement of law that was supported by the evidence that Smith hid in Holman's attic when the police came to her residence on the day after the murders and that he then fled to Kansas. Smith objected, arguing that it was a nonmodel instruction and that it was an improper comment on the evidence by the circuit court. The circuit court overruled Smith's objection, finding that the instruction was appropriate based on the testimony that had been presented.

A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Schnarr, supra*. A nonmodel jury instruction should be given only when the model instructions do not correctly state the law or there is no model instruction on the subject. *Harmon v. State*, 2020 Ark. 217, 600 S.W.3d 586. We will not reverse a circuit court's ruling on whether to submit a jury instruction absent an abuse of discretion. *Id.*

The instruction given to the jury here stated,

---

[3]The legislature amended section 16-93-609(b) in 2023 to provide that it did not include residential burglaries committed before April 1, 2015, unless the defendant was sentenced on or after May 24, 2022, or the sentencing order expressly designated that the defendant was sentenced under that section. Ark. Code Ann. § 16-93-609(b)(2)(B). Section 5-4-501(d) was not amended to add a similar limitation.

Evidence that the defendant fled to avoid arrest or detection by the police may be considered by you in your deliberations as circumstantial evidence corroborative of the guilt of the defendant. *Hunt v. State*, 2015 Ark. App. 53 (Ark. Ct. App. 2015)

Although there is no model jury instruction on the subject, we have held that a jury may consider evidence of flight as consciousness of guilt. *E.g.*, *Flowers v. State*, 342 Ark. 45, 25 S.W.3d 422 (2000); *Cooper v. State*, 317 Ark. 485, 879 S.W.2d 405 (1994); *Hunt v. State*, 2015 Ark. App. 53, 454 S.W.3d 771. Thus, the jury instruction contained a correct statement of the law.

While Smith claims that *Hunt*, *supra*, wherein the submission of an identical instruction on flight was affirmed on appeal, is factually distinguishable, the evidence presented in the present case also supported giving the instruction. Holman testified that after the police spoke with her at her home on the day after the homicides, she discovered that Smith had been hiding in the attic because he was scared of being implicated in the crimes. He was later arrested in Kansas by the United States Marshal Service and extradited back to Arkansas. Although Smith claims that he was in Kansas to visit his girlfriend rather than to avoid arrest, the instruction did not require that the jury reach any particular conclusion from the evidence that was presented; rather, the instruction merely stated the evidence "may" be considered as corroborative of Smith's guilt. Nor was the jury instruction an improper comment on the evidence, as argued by Smith, given its discretionary language. Smith also contends that it was erroneous for the instruction to include a case citation. However, he did not raise this particular argument below, and it is therefore not preserved for our review. *Schnarr*, *supra*. Because Smith has not demonstrated that the circuit court abused its discretion by giving this nonmodel instruction, we affirm on this point.

VII. *Whether Remand Is Necessary to Correct an Error in the Sentencing Order*

Finally, Smith argues that we should remand this matter to the circuit court to correct a scrivener's error in his sentencing order. He claims that the offense on the third count should be "attempted capital murder" rather than "capital murder." As the State responds, however, the sentencing order is accurate because on this count, the box for "Attempted" is checked. Thus, no remand is necessary.

VIII. *Rule 4-3(a) Review*

Because Smith received a life sentence, the record has been examined for all objections, motions, and requests made by either party that were decided adversely to Smith in compliance with Arkansas Supreme Court Rule 4–3(a), and no other prejudicial error has been found.

Affirmed.

Special Justice SHANE HENRY joins.

BRONNI, J., not participating.

*Sharon Kiel*, for appellant.

*Tim Griffin*, Att'y Gen., by: *A. Evangeline Bacon*, Ass't Att'y Gen., for appellee.

21