Cite as 2025 Ark. 202

# SUPREME COURT OF ARKANSAS
**No.** CR–25–73

| | | |
|---|---|---|
| LAZARUS REAVES | | **Opinion Delivered:** December 11, 2025 |
| | APPELLANT | APPEAL FROM THE WASHINGTON COUNTY CIRCUIT COURT [NO. 72CR-21-387] |
| V. | | |
| STATE OF ARKANSAS | | HONORABLE JOANNA TAYLOR, JUDGE |
| | APPELLEE | AFFIRMED. |

**COURTNEY RAE HUDSON, Associate Justice**

A Washington County Circuit Court jury found appellant Lazarus Reaves guilty of capital murder and tampering with physical evidence. Reaves was sentenced to life imprisonment without parole for the murder and a concurrent term of six years' imprisonment for tampering. He now appeals. For reversal, Reaves argues that the circuit court erred by denying his motion for directed verdict on the capital-murder charge. We affirm.

Reaves was charged in connection with the shooting death of his girlfriend, Shaletian "Shay" Larry, on December 26, 2020. The State waived the death penalty. At trial, the following evidence was presented to the jury. Reaves and Larry arrived in Fayetteville from Georgia in late October 2020. They moved into a two-bedroom apartment with Reaves's cousin, Dawand Wallace, at Lakeside Village Apartments. Larry owned a black BMW sedan with a Georgia license plate.

On December 4, 2020, the Fayetteville Police Department responded to a disturbance call at the apartment. An officer testified that Larry was crying when she answered the door that evening, but she would not disclose why she was crying; Reaves was also present and answered many of the officer's questions for her. The officers left without making an arrest. Additionally, text messages between Reaves and Larry indicated an abusive relationship. For instance, in one message, Larry texted Reaves about his having previously hit her with a gun, which he did not deny. On December 19, 2020, in a series of angry messages, Reaves texted Larry, "I'll shoot you in front of the police IDGAF right now." Leading up to the murder, Reaves was angry at Larry over a message she received from another man. Despite Larry's attempts to reassure Reaves, he called her names and accused her of wanting to be with this other man.

Wallace testified that he never saw any physical violence between Reaves and Larry but that on one occasion he came home to find the bathroom door cracked and hanging off the hinges. When confronted, Reaves said only that it would not happen again. Wallace was also aware that the police had responded to the domestic-disturbance call, and he noticed that Reaves and Larry both had scratches following that incident. Wallace testified that he was getting "fed up" with them and that he had talked to them about moving out.

Larry's sister, Sharocka Waters, who lives in Florida, testified that she and her sister were very close and spoke often on video calls. Waters testified that Reaves was always accusing Larry of cheating, that the relationship was abusive, and that Larry often had bruises caused by Reaves. The day before Larry was killed, her nose was bruised and possibly broken. On the morning of her death, Larry told her sister that Reaves had gotten angry

2

the night before after seeing a message from her ex on her phone. Reaves left in Larry's car, leaving her locked outside the apartment in the cold. Waters testified that Larry had stated that morning of December 26 that she "was done" and wanted to come home to Florida. Larry said that Reaves had broken her purse and that they were about to go get a new purse when he returned with her car. Larry and Waters were still on a call when Reaves and Larry left to go to the store; Larry wanted to drive, but Reaves would not let her. Larry texted Waters for the last time at 3:39 p.m., showing her a picture of Reaves's phone with a contact under the name "Thomas" and a phone number. Waters knew that Reaves had a history of saving women's phone numbers under men's names—and that he got violently angry when Larry touched his phone. After receiving the picture of the contact information, Waters called the number and a woman answered. Waters never had the opportunity to tell Larry about calling the number because the following day she received a notification that Larry had been killed.

As Waters recounted, on the afternoon of December 26, 2020, Reaves and Larry left the apartment in Larry's car to go to Burlington Coat Factory in Rogers to get a new purse. Surveillance footage from the store shows them leaving together at approximately 3:30 p.m. Several witnesses testified that, as they were driving south on Interstate 49 that afternoon, they saw a black BMW driving erratically—speeding dangerously, swerving across lanes, and nearly causing accidents. During this time, witnesses observed a woman open the front passenger door and attempt to jump out of the vehicle, before being pulled back into the car. Another witness saw a woman attempt to exit the rear driver's-side door. The BMW took exit 67A, and witness Jose Rivas, who had noticed the BMW speeding past him earlier,

took the same exit. Rivas saw that the same BMW was parked just beyond the bridge; a woman was face down on the ground, and a man was sitting in the driver's side with his leg outside of the vehicle. Rivas testified that the man—Reaves—looked at him and then sped away. Rivas began to follow the BMW but decided at his wife's urging to pull over and call police.

The first officer on the scene found Larry's body positioned face down on the shoulder of the roadway with her head near the concrete barrier. Additional emergency personnel arrived soon after, and Larry was taken to the hospital without ever regaining consciousness. She was quickly identified from the driver's license and credit cards located near where she was found.

Wallace testified that after someone had called him on December 26 to tell him that the police were outside his apartment, he received a phone call from Reaves, who stated that he had "fucked up" and was about to leave town. In addition, law enforcement recovered a three-minute voicemail message that had been inadvertently left from Larry's phone during the altercation in the car. While most of the message is difficult to understand, a distressed female voice can be heard yelling and, at one point, pleading to "stop the car." A male voice can be heard shouting in an aggressive and threatening manner. At the end of the message, the male voice appeared to say, "Bitch, you ready for what?" The message ended at 3:50 p.m., only three minutes before the first 911 call reporting that Larry was on the side of the road.

An autopsy revealed that Larry died from a single gunshot wound to her back. She also had a large laceration below her right eye that was consistent with being struck with a

4

blunt object such as a gun. In addition, Larry's blood was in the interior of the BMW, both in the front and in the back; a washcloth with Larry's blood was found in their shared bedroom; and 40-caliber ammunition was found in a duffel bag in Reaves and Larry's closet. A bullet fragment and a 40-caliber shell casing found near Larry's body had been fired from a handgun that officers recovered from a dumpster near the apartment. Records showed that Larry had purchased that handgun. When the gun was recovered from the dumpster, it had one bullet missing.

At the close of the State's case, Reaves made a motion for directed verdict on both the capital-murder and tampering-with-physical-evidence charges. The circuit court denied the motion, the defense rested without presenting any evidence, and the renewed motion for directed verdict was likewise denied. Reaves was found guilty and sentenced as indicated above. This appeal followed.

For his sole point on appeal, Reaves argues that the circuit court should have granted his motion for directed verdict on the capital-murder charge. A motion for a directed verdict is a challenge to the sufficiency of the evidence. *Hudson v. State*, 2025 Ark. 129, at 7, 720 S.W.3d 91, 96. On appeal, the sufficiency of the evidence is tested to determine whether the verdict is supported by substantial evidence, direct or circumstantial. *Id*. Substantial evidence is that which is of sufficient force and character to compel a conclusion one way or the other beyond suspicion or conjecture. *Id*. In determining whether there is substantial evidence to support the verdict, this court reviews the evidence in the light most favorable to the State. *Smith v. State*, 2025 Ark. 26, at 6–7, 708 S.W.3d 336, 343. Upon review, this

court's role is to determine whether the jury resorted to speculation and conjecture in reaching its verdict. *Clemons v. State*, 2010 Ark. 337, at 3, 369 S.W.3d 710, 712.

As charged in this case, a person commits capital murder if, "[w]ith the premeditated and deliberated purpose of causing the death of another person, the person causes the death of any person[.]" Ark. Code Ann. § 5-10-101(a)(4) (Repl. 2024). Here, Reaves expressly concedes that there was substantial evidence that he shot and killed Larry, but he contends that there was insufficient evidence that he did so with the requisite premeditated and deliberated purpose. This court has stated that premeditated and deliberated murder occurs when the killer's conscious object is to cause death, and he forms that intention before he acts and as a result of a weighing of the consequences of his course of conduct. *Brooks v. State*, 2016 Ark. 305, at 6, 498 S.W.3d 292, 296. However, premeditation is not required to exist for a particular length of time; it may be formed in an instant and is rarely capable of proof by direct evidence but must usually be inferred from the circumstances of the crime. *See id.* A jury can infer premeditation and deliberation from circumstantial evidence, such as the type and character of the weapon used; the nature, extent, and location of wounds inflicted; and the conduct of the accused. *Id.*

In the present case, Reaves's arguments regarding premeditation and deliberation are unavailing. He contends that his and Larry's tumultuous relationship and the fight occurring on the interstate indicate that the shooting was spontaneous, not planned. However, premeditation can be formed in an instant. *E.g.*, *Brooks*, *supra*; *Wyles v. State*, 2024 Ark. 128, 696 S.W.3d 296. Here, there was evidence that Reaves was violent and abusive towards Larry. On the day of the shooting, Reaves, having previously threatened to shoot Larry in

6

front of police, attacked her for several minutes as she desperately tried to escape the speeding vehicle. Larry was likely crawling out of the back seat of the vehicle when Reaves shot her at close range in her back and left her on the side of the road. On this record, the jury's determination that Reaves acted with the premeditated and deliberated purpose of causing Larry's death is supported by substantial evidence.

Additionally, Reaves points out that Larry had been shot one time, in contrast with other cases involving multiple gunshots. Indeed, we have recognized that evidence of multiple close-range gunshots is consistent with a conclusion of premeditation and deliberation. *See, e.g., Coggin v. State*, 356 Ark. 424, 156 S.W.3d 712 (2004); *Wallace v. State*, 2009 Ark. 90, 302 S.W.3d 580; *Smith v. State*, 2024 Ark. 161, 699 S.W.3d 92. Yet we have never suggested that a single-gunshot murder cannot be committed with the premeditated and deliberated purpose of causing death. Rather, we determine whether there was sufficient evidence of premeditation and deliberation to support a conviction for capital murder based on the evidence in the record. The number of gunshot wounds sustained by a victim is only one piece of evidence out of many, and a single gunshot wound certainly can be consistent with a conclusion of premeditation and deliberation. On this record, we hold that substantial evidence supports the jury's finding that Reaves caused the death of Shay Larry with the premeditated and deliberated purpose of causing her death.

Affirmed.

BAKER, C.J, and WEBB, J., concur.

*Short Law Firm*, by: *Lee D. Short*, for appellant.

*Tim Griffin*, Att'y Gen., by: *Dalton Cook*, Ass't Att'y Gen., for appellee.